[Nos. 76833-1; 77596-6. En Banc.]
Argued February 7, 2006. Decided April 5, 2007.

THE STATE OF WASHINGTON, *Petitioner*, v. CHARLES L. KIRKMAN, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. RUBEN JAUREZ CANDIA, *Respondent*.

*Arthur D. Curtis, Prosecuting Attorney*, and *Kimberley R. Farr, Michael C. Kinnie*, and *Wendy H. Hanson, Deputies*, for petitioner.

*Lisa E. Tabbut*, for respondent Kirkman.

*James J. Sowder*, for respondent Candia.

¶1 J.M. JOHNSON, J. — Petitioner State of Washington appeals two Court of Appeals' opinions reversing jury con-

victions. Respondent Charles L. Kirkman was convicted of first degree rape of an eight-year-old girl. Respondent Ruben Jaurez Candia was convicted on four counts of first degree rape of a child. The combined cases raise the common issue of whether a trial court allowed testimony of an investigating officer or examining doctor, argued to be improper, as supporting the victims' credibility and, if so, whether the error was "manifest" constitutional error that may be asserted for the first time on appeal.

¶2 This court holds that opinion testimony relating only indirectly to a victim's credibility, if not objected to at trial, does not give rise to a "manifest" constitutional error. Accordingly, this court reverses both Court of Appeals' opinions and affirms the convictions in both cases.

FACTS AND PROCEDURAL HISTORY

A. Kirkman

¶3 The State's evidence indicated Kirkman sexually assaulted eight-year-old A.D. in the early morning of December 29, 2002. Specifically, Kirkman removed A.D.'s clothing and touched her vaginal area with his finger. After the assault, A.D. called her aunt for help. She told her aunt that Kirkman had touched her privates, inside her underwear.

¶4 The State charged Kirkman with one count of first degree child rape on April 29, 2003. A pretrial competency hearing was conducted to determine whether A.D. could testify at trial. At this hearing, A.D. testified that Kirkman had touched her vagina and anus. The State also called Detective Kerr, an employee of the Child Abuse Intervention Center, who interviewed A.D. about the alleged sexual abuse. Kerr testified that during the interview, he asked A.D. if she promised to tell the truth, and she responded, "I promise." 1 Report of Proceedings (RP) (July 15, 2003) at 35. Kerr asked A.D. what happened on December 30, and she repeated what she had told her aunt. The trial court

found A.D. competent to testify and held A.D.'s statements to her aunt, C. Landeros, and to Kerr admissible.

¶5 At trial, the State's first witness was Kerr. He stated he had given preliminary competency protocol to determine A.D.'s ability to tell the truth and obtained A.D.'s promise to tell the truth before she related the events. Kirkman did not object to Kerr's testimony.

¶6 The State also called Dr. John Stirling. He examined A.D. on February 27, 2003, at the Vancouver Clinic. The State asked him, "Based upon the physical examination, can you tell us whether you have an opinion within a reasonable degree of medical certainty of whether the physical examination was consistent with the girl's explanation of what occurred?" 2 RP (July 23, 2003) at 173. Dr. Stirling responded that he found nothing in the physical examination to make him doubt A.D. but that there was also nothing to confirm A.D.'s explanation. Kirkman did not object.

¶7 The State then asked Dr. Stirling for his general assessment of the case. He stated that the physical examination did not confirm A.D.'s story but she had described sexual touching with appropriate affect ("sad when one would expect her to be sad, and reluctant to talk about things that were embarrassing . . . and the vocabulary seemed to be appropriate for a young lady of her age"). Dr. Stirling also stated that A.D.'s history was "clear and consistent" with plenty of detail. 2 RP at 176. Again, Kirkman did not object. The jury found Kirkman guilty of first degree child rape.

¶8 Kirkman appealed, arguing for the first time that Detective Kerr and Dr. Stirling had offered opinions supporting A.D.'s credibility, invading the exclusive province of the jury to determine guilt. In a split, published opinion (Quinn-Brintnall, C.J., dissenting), the Court of Appeals agreed. *State v. Kirkman*, 126 Wn. App. 97, 104, 107 P.3d 133 (2005). The appeals court concluded the error was a "manifest error that affects a constitutional right" and held that Kirkman could raise the issue on appeal despite not

objecting at trial. *Id.* at 106. The court determined the error was prejudicial and reversed and remanded for retrial. *Id.* at 107. The State petitioned for this court's review, which was granted. *State v. Kirkman*, 155 Wn.2d 1014 (2005).

## B. Candia

¶9 The State's evidence indicated Candia sexually assaulted six-year-old C.M.D. on numerous occasions. The acts consisted of vaginal penetration, sodomy, and fellatio.

¶10 Candia was charged with four counts of rape of a child in the first degree, occurring between November 1, 1999, and March 31, 2003. A pretrial competency hearing of C.M.D. was held on December 4, 2003. Following testimony of C.M.D., her mother, Misty Dudley, and Detective Deborah Greer, the court found C.M.D. competent to testify at trial. The court found statements made by C.M.D. to Dudley and Detective Greer met the reliability factors and were admissible under the child hearsay statute, RCW 9A.44.120, and *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

¶11 The matter went to a jury trial on February 2, 2004. At trial, Dr. John Stirling was called to testify about his findings from physical examinations conducted on C.M.D. on May 31, 2001, and October 9, 2003. Dr. Stirling testified that there was no physical evidence of sexual contact. The State also asked Dr. Stirling, "Do you have an opinion with medical certainty whether the findings you observed are consistent with the history of abuse you were given?" 2B RP (Feb. 2, 2004) at 251. He responded, "So you're asking how we could reconcile a normal examination with the story that she had been sodomized and that he had inserted something into her genitalia?" *Id.* at 251-52. Dr. Stirling then replied, "to have no findings after receiving a history like that is actually the norm rather than the exception." *Id.* at 252.

¶12 Dr. Stirling also testified about statements C.M.D. made to him during the course of those examinations. Dr. Stirling stated C.M.D. "had good language skills for her

age, she spoke clearly." *Id.* at 244. He then testified to C.M.D.'s disclosures of being anally and vaginally raped. Candia did not object to the testimony.

¶13 Detective Greer testified about statements made to her by C.M.D. on August 14, 2003. Detective Greer described the competency protocol she administered to gauge C.M.D.'s ability to distinguish between a truth and a lie. *Id.* at 310. Detective Greer stated that "I remind them, that I'm there to talk about something very, very important with them, and I ask them to make a promise to tell me the truth." *Id.* at 311. Detective Greer then related what C.M.D. told her. These statements included descriptions of many acts of sexual intercourse, including penetration. C.M.D. described how some of these acts felt. She also talked about several residences and described in which room the acts occurred. Candia did not object to this testimony.

¶14 C.M.D. also took the stand and was cross-examined by defense counsel. C.M.D. described how Candia orally, vaginally, and anally raped her. She explained it felt bad and "hurted." *Id.* at 286. She also testified about their several residences and the rooms in which each act occurred. Candia was convicted by the jury on all four counts on February 4, 2004. Candia appealed.

¶15 Relying upon its decision in *Kirkman,* a divided panel of the Court of Appeals (Quinn-Brintnall, C.J., dissenting) reversed the trial court and remanded for a new trial. *State v. Candia,* noted at 128 Wn. App. 1053, 2005 Wash. App. LEXIS 1871. It ruled that Dr. Stirling and Detective Greer improperly and prejudicially offered opinions supporting C.M.D.'s credibility. *Id.* at *6. The majority held that admission of these opinions constituted "manifest error affecting a constitutional right" that could be raised for the first time on appeal even if no objection was made at trial. *Id.* at *25. The State petitioned for this court's review, and it was granted. *State v. Candia,* 155 Wn.2d 1015 (2005).

¶16 The State argues that Kirkman failed to preserve his claims of error and the Court of Appeals should not have reached the merits of his allegations. We agree, but necessarily also discuss the errors alleged.

¶17 A party may assign evidentiary error on appeal only on a specific ground made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). This objection gives a trial court the opportunity to prevent or cure error. *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976). For example, a trial court may strike testimony or provide a curative instruction to the jury.

¶18 In these cases, the respective defendants failed to object or move to strike allegedly erroneous evidence and did not give the trial courts such an opportunity. Thus, neither defendant preserved the issue for appellate review.

¶19 Both Kirkman and Candia argued to avoid this preservation requirement at the Court of Appeals by asserting constitutional bases for the alleged errors. Both defendants reiterate those arguments before this court.

¶20 The general rule is that appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001); *Tolias*, 135 Wn.2d at 140.

¶21 Pursuant to RAP 2.5(a)(3), to raise an error for the first time on appeal, the error must be "manifest" and truly of constitutional dimension. *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). The defendant must identify a constitutional error and show how the alleged error

actually affected the defendant's rights at trial. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *McFarland*, 127 Wn.2d at 333; *Scott*, 110 Wn.2d at 688. If a court determines the claim raises a manifest constitutional error, it may still be subject to harmless error analysis. *McFarland*, 127 Wn.2d at 333; *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

¶22 Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001); *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987).

¶23 Here, Kirkman and Candia both allege their trials involved testimony improperly opining on their (or that of the victim's) credibility. Thus, each has raised *alleged* errors of constitutional dimension (i.e., right to a jury trial). But as we discuss below, the testimony at issue did not directly address credibility. Even if any testimony was improper, the testimony was not objected to and did not constitute "manifest" constitutional error reviewable for the first time on appeal.

## A. Improper Testimony

¶24 A trial court's decision to admit expert testimony is reviewed for abuse of discretion. *State v. Ciskie*, 110 Wn.2d 263, 280, 751 P.2d 1165 (1988); *State v. Petrich*, 101 Wn.2d 566, 575, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

¶25 Generally, no witness may offer testimony in the form of an opinion regarding the veracity of the defendant. Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury. *Demery*, 144 Wn.2d at 759; *Black*, 109 Wn.2d at 348. This is

true unless the defendant offers affirmative testimony raising the issue of credibility.

¶26 As to the victim, even if there is uncontradicted testimony on a victim's credibility, the jury is not bound by it. Juries are presumed to have followed the trial court's instructions, absent evidence proving the contrary. *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984); *State v. Cerny*, 78 Wn.2d 845, 850, 480 P.2d 199 (1971), *vacated on other grounds*, 408 U.S. 939, 92 S. Ct. 2873, 33 L. Ed. 2d 761 (1972). The constitutional role of the jury requires respect for the jury's deliberations. *See* CONST. art. I, § 21. The assertion that the province of the jury has been invaded may often be simple rhetoric.[1]

¶27 In determining whether such statements are impermissible opinion testimony, the court will consider the circumstances of the case, including the following factors: "(1) 'the type of witness involved,' (2) 'the specific nature of the testimony,' (3) 'the nature of the charges,' (4) 'the type of defense, and' (5) 'the other evidence before the trier of fact.' " *Demery*, 144 Wn.2d at 759 (quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993)).

¶28 Defendants argue that an improper finding of guilt may be implied from an opinion that a child claiming sexual abuse is telling the truth. *See State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992); *State v. Fitzgerald*, 39 Wn. App. 652, 694 P.2d 1117 (1985). Testimony from a law enforcement officer regarding the veracity of another witness may be especially prejudicial because an officer's testimony often carries a special aura of reliability. *Demery*,

---

[1] At common law, the term "invasion of the province of the jury" was not a doctrine but an explanation of the rationale behind the common law's evidentiary rule against admission of expert testimony on ultimate issues. *See DeGroot v. Winter*, 261 Mich. 660, 247 N.W. 69 (1933). The term has been criticized by some authorities. 7 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1920, at 18-19 (James H. Chadbourn ed., 1978); MCCORMICK ON EVIDENCE § 12 (Edward W. Cleary ed., 3d ed. 1984). Congress rejected the ultimate issue rule when promulgating Fed. R. Evid. 704(a). *See* FED. R. EVID. 704 advisory committee notes. Washington's rule governing opinions on ultimate issues is identical to Fed. R. Evid. 704(a), which rejected strictures against allowing witnesses to express opinions on ultimate issues.

144 Wn.2d at 765. However, it has long been recognized that a qualified expert is competent to express an opinion on a proper subject, even though he thereby expresses an opinion on the ultimate fact to be found by the trier of fact. *Gerberg v. Crosby*, 52 Wn.2d 792, 795-96, 329 P.2d 184 (1958); ER 704. The mere fact that the opinion of an expert covers an issue which the jury has to pass upon does not call for automatic exclusion. *State v. Ring*, 54 Wn.2d 250, 255, 339 P.2d 461 (1959).

### 1. Kirkman

¶29 The State argues that the Court of Appeals wrongly held that the testimony provided by Dr. Stirling and Detective Kerr amounted to improper opinions on the victim's credibility. The State also contends that even if the trial court erred, no objection was made; thus, the issue is waived on appeal. We agree with the State.

### a. Dr. Stirling

¶30 Dr. Stirling was asked for his expert opinion on the results of his physical examination of A.D. He testified:

> I'm trying to think of how to phrase this. I found nothing on the physical examination that would make me doubt what she'd said, or was there anything that would necessarily confirm it. There was no damage, it was a normal examination.

2 RP at 173.

¶31 Asked for his general assessment, Dr. Stirling testified that A.D. gave "a very clear history" with "lots of detail" and "a clear and consistent history of sexual touching . . . with appropriate affect" and that "[t]he physical examination doesn't really lead us one way or the other, but I thought her history was clear and consistent." *Id.* at 175-76.

¶32 Relying upon *State v. Carlson*, 80 Wn. App. 116, 906 P.2d 999 (1995), the Court of Appeals held that Dr. Stirling "testified that A.D.'s report of sexual touching was clear, consistent, with appropriate affect, and that she used

appropriate vocabulary. The physician was *clearly* commenting on A.D.'s credibility." *Kirkman,* 126 Wn. App. at 104 (emphasis added).

¶33 The State counters that Dr. Stirling did not comment directly or indirectly on Kirkman's guilt, nor did he comment on the innocence of another, as in *State v. Dolan,* 118 Wn. App. 323, 329, 73 P.3d 1011 (2003).

¶34 We agree with the State and the dissent below. The Court of Appeals erroneously deemed Dr. Stirling's testimony as "clearly" an improper opinion implying Kirkman's guilt. Dr. Stirling was not "clearly" commenting on A.D.'s credibility and actually testified that his findings neither corroborated nor undercut A.D.'s account. Dr. Stirling did not come close to testifying that Kirkman was guilty or that he believed A.D.'s account. Dr. Stirling's statement that A.D.'s account was "clear and consistent" does not constitute an opinion on her credibility. A witness or victim may "clearly and consistently" provide an account that is false. The jury properly was instructed to determine the facts. Thus, Dr. Stirling's testimony was not a manifest error of constitutional magnitude.

### b. Detective Kerr

¶35 Kerr testified about the competency protocol he gave to A.D., relating to her ability to tell the truth. "Yes . . . it's kind of a competency." 2 RP at 73. When asked why, Kerr responded, "[b]ecause I'm—I'm interested in—in this person being able to distinguish between truth and lies." *Id.* at 74. Kerr testified that A.D. was able to distinguish between the truth and a lie and that A.D. expressly promised to tell him the truth. Kerr then related what A.D. said in her interview.

¶36 The Court of Appeals' majority conceded that "Detective Kerr did not offer his direct opinion on A.D.'s credibility." *Kirkman,* 126 Wn. App. at 105. The court nonetheless ruled that because Kerr told the jury that he "tested A.D.'s competency and her truthfulness," *id.,* that he "[i]n essence" told the jury that A.D. told him the truth in pro-

viding her account of events. *Id.* The Court of Appeals cited *Demery* for the proposition that "a police officer's testimony may particularly affect a jury because of its 'special aura of reliability.' " *Id.* (quoting *Demery*, 144 Wn.2d at 765).

¶37 The challenged portion of Kerr's testimony is simply an account of the interview protocol he used to obtain A.D.'s statement. Kerr did not testify that he believed A.D. or that she was telling the truth. Therefore, no manifest error occurred that could relieve Kirkman of his duty to object.

¶38 By testifying as to this interview protocol, Kerr "merely provided the necessary context that enabled the jury to assess the reasonableness of the . . . responses." *Demery*, 144 Wn.2d at 764. Detectives often use a similar protocol in all child witness interviews, whether they believe the child witness or not.

¶39 An interview protocol as employed by Kerr does not carry a "special aura of reliability" beyond the "special aura of reliability" conferred upon a witness when a judge swears him or her to tell the truth in front of the jury at trial. *See* RCW 5.28.020. A jury must still determine credibility and truthfulness of each witness. Kerr's testimony was not a manifest error of constitutional magnitude.

## 2. Candia

¶40 The State argues the Court of Appeals also incorrectly held the testimony of Dr. Stirling and Detective Greer amounted to improper opinion on the victim's credibility. We agree with the State.

### a. Dr. Stirling

¶41 Dr. Stirling testified about findings from a physical examination conducted on C.M.D. in October 2003 and an earlier examination in May 2001. He testified about statements of C.M.D. during those examinations about abuse. After establishing that there was no physical evidence of sexual contact, the State asked Dr. Stirling, "Do

you have an opinion with medical certainty whether the findings you observed are consistent with the history of abuse you were given?" 2B RP at 251. Dr. Stirling stated, "I would say the findings—to have no findings after receiving a history like that is actually the norm rather than the exception." *Id.* at 252. He went on to say, "I would be very surprised if her assailant were able to actually insert his penis into her vagina." *Id.* at 255.

¶42 The Court of Appeals held that Dr. Stirling's testimony improperly bolstered C.M.D.'s credibility. Specifically, the Court of Appeals took exception to the State's line of questioning about the consistency of Dr. Stirling's findings and the history of abuse he was given: "Essentially, the physician was asked to reconcile the negative physical findings with the victim's statement." *Candia*, 2005 Wash. App. LEXIS 1871, at *3.

¶43 The Court of Appeals held that this question was similar to one they had disapproved of in *Kirkman*. Further, the Court of Appeals asserted that Dr. Stirling's testimony concerning C.M.D.'s statement about penetration was improper because "[t]he focus of the State's questions was the victim's statement, not the physician's examination," and concluded that "[t]his is clearly a comment on credibility, albeit favorable to Candia." *Id.* at *3-4. The Court of Appeals nonetheless concluded that "the physician's testimony bolstered the statements of the alleged victim. It, in essence, was to give the jury the opinion of the physician as to the credibility of the girl." *Id.* at *4.[2] The Court of Appeals held the doctor's testimony improper under *Kirkman*.

¶44 In response, the State contends that Dr. Stirling merely testified that his examination of C.M.D. neither corroborated nor contradicted C.M.D.'s allegations. Dr. Stirling never commented on whether he believed C.M.D., nor did he opine on Candia's credibility or guilt.

---

[2] Concerning the testimony of Dr. Stirling, however, the Court of Appeals' majority acknowledged that "[a]s with the doctor, the detective did not affirmatively state that she believed or disbelieved the victim's allegations." *Candia*, 2005 Wash. App. LEXIS 1871, at *5.

¶45 In an alternative argument, the State contends that *Kirkman* is distinguishable because in that case the Court of Appeals found improper the doctor's testimony relating to the child's verbal account of abuse (as "clear and consistent"), not the results of the physical examination. Here, by contrast, the State argues that Dr. Stirling simply testified that he was able to speak and communicate with her in a clear manner.

¶46 We also agree with the State on this issue. Dr. Stirling's testimony was particularly relevant because Candia's jury was presented with what might appear to be a discrepancy: C.M.D. alleged that she had been raped numerous times by an adult, but there was no medical evidence to support these allegations. In cross-examination, Candia's counsel focused on C.M.D.'s allegations in order to argue that the medical examination showed that C.M.D. had not been raped as she claimed. Cases involving alleged child sex abuse make the child's credibility "an inevitable, central issue." *Petrich*, 101 Wn.2d at 575. Where the child's credibility is thus put in issue, a court has broad discretion to admit evidence corroborating the child's testimony. *Id.*

¶47 Dr. Stirling did not come close to testifying on any ultimate fact. He never opined that Candia was guilty, nor did he opine that C.M.D. was molested or that he believed C.M.D.'s account to be true. Dr. Stirling testified only that he was able to communicate with C.M.D. because she "had good language skills for her age, she spoke clearly," 2B RP at 244. His testimony was content neutral, focusing upon the clear communication, rather than the substance of matters discussed. The doctor's testimony did not constitute manifest error.

b. Detective Greer

¶48 Greer described a "competency" protocol she administered before interviewing C.M.D. *Id.* at 310. Greer tested C.M.D.'s ability to distinguish between a truth and a lie and asked the child to promise to tell the truth. Detective Greer

then related what C.M.D. had told her about her sexual encounters with Candia.

¶49 The Court of Appeals held that, "as in *Kirkman*, the detective told the jury that she tested both the child's competency and her truthfulness and further, that the child was telling the truth when she talked to the detective," thereby finding Detective Greer's testimony improper. *Candia*, 2005 Wash. App. LEXIS 1871, at *5. Inconsistently, the Court of Appeals' majority noted that "the detective did not affirmatively state that she believed or disbelieved the victim's allegations." *Id.*

¶50 The State contends that both Court of Appeals' decisions erroneously hold that testimony in which an officer describes the competency "protocol" constitutes constitutionally improper opinion of guilt or witness credibility. A detective's testimony as to the protocol utilized in interviews only provides context for the interview of a child victim and does not improperly comment of the truthfulness of the victim.

¶51 This interview protocol, including that the child promised to tell the truth, does not impermissibly infringe on the jury's province given that the same child takes the witness stand in front of the jury and swears under oath that the testimony given will be truthful. *See* RCW 5.28-.020; ER 603. Thus, we do not find the testimony constitutes a manifest error of constitutional magnitude.

## B. Manifest Constitutional Error

¶52 RAP 2.5(a)(3) does not permit *all* asserted constitutional claims to be raised for the first time on appeal, but only certain questions of "manifest" constitutional magnitude. *Scott*, 110 Wn.2d at 687, 688. This court has rejected the argument that all trial errors which implicate a constitutional right are reviewable under RAP 2.5(a)(3), noting that "[t]he exception actually is a narrow one, affording review only of 'certain constitutional questions.' " *Id.* at 687 (quoting RAP 2.5 cmt. (a) at 86 Wn.2d

1152 (1976)). Exceptions to RAP 2.5(a) must be construed narrowly. *WWJ Corp.*, 138 Wn.2d at 603.

¶53 Appellate courts will not approve a party's failure to object at trial that could identify error which the trial court might correct (through striking the testimony and/or curative jury instruction). *Scott*, 110 Wn.2d at 685. Failure to object deprives the trial court of this opportunity to prevent or cure the error. The decision not to object is often tactical. If raised on appeal only after losing at trial, a retrial may be required with substantial consequences. *State v. Madison*, 53 Wn. App. 754, 762-63, 770 P.2d 662 (1989).

¶54 "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. *Walsh*, 143 Wn.2d at 8; *McFarland*, 127 Wn.2d at 333-34. " 'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.' " *WWJ Corp.*, 138 Wn.2d at 603 (quoting *Lynn*, 67 Wn. App. at 345). This reading of "manifest" is consistent with *McFarland*'s holding that exceptions to RAP 2.5(a) are to be construed narrowly. *WWJ Corp.*, 138 Wn.2d at 603. If the trial record is insufficient to determine the merits of the constitutional claim, the error is not manifest and review is not warranted. *Id.* at 602; *McFarland*, 127 Wn.2d at 333 (citing *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993)).

### 1. Manifest Constitutional Error and Improper Witness Opinion

¶55 No case of this court has held that a manifest error infringing a constitutional right *necessarily* exists where a witness expresses an opinion on an ultimate issue of fact that is not objected to at trial. Prior decisions in the Court of Appeals have found alleged improper witness opinion testimony *not* to constitute "manifest" error.[3]

---

[3] *See, e.g., State v. Wilber*, 55 Wn. App. 294, 298, 777 P.2d 36 (1989); *State v. Madison*, 53 Wn. App. 754, 762, 770 P.2d 662 (1989); *Heatley*, 70 Wn. App. at 585-86.

¶56 However, in *Kirkman* the Court of Appeals relied upon *Dolan*, 118 Wn. App. at 330 and *State v. Saunders*, 120 Wn. App. 800, 811, 86 P.3d 232 (2004), in concluding that improper witness testimony can be raised for the first time on appeal as a manifest constitutional error.[4] *See also State v. Mendoza-Solorio*, 108 Wn. App. 823, 834-35, 33 P.3d 411 (2001) (assuming, without deciding, that the facts raised a manifest constitutional error but finding error harmless).

¶57 In *State v. Carlin*, 40 Wn. App. 698, 700 P.2d 323 (1995), the Court of Appeals did seem to hold that expression of an opinion touching upon a defendant's guilt, not objected to at trial, amounts to a "manifest error" under RAP 2.5(a)(3). But *Carlin*'s apparent holding in this regard was squarely rejected by the Court of Appeals in *Heatley*, 70 Wn. App. at 586. There, the court said it rejected *Carlin* "to the extent it is read as holding that a claim that testimony is an opinion on guilt *necessarily* alleges a manifest constitutional error that will be considered for the first time on appeal under RAP 2.5(a)." *Id.* (emphasis added). As the Court of Appeals noted in *Heatley*, "*Carlin* provides no analysis and cites no relevant authority for the proposition that this is the type of 'manifest error' contemplated by RAP 2.5(a)(3)." *Id.* at 583.

¶58 In light of the underlying rationale for RAP 2.5(a)(3), *Madison* and *Heatley* provide the better approach. Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a "manifest" constitutional error. "Manifest error" requires a nearly explicit statement by the witness that the witness believed the accusing victim. Requiring an explicit or almost explicit witness statement on an ultimate issue of fact is consistent with our precedent holding the manifest error exception is narrow. *WWJ Corp.*, 138 Wn.2d at 603.

---

[4] Oddly, *Dolan* relied upon *Madison*, 53 Wn. App. at 760, to find a manifest constitutional error reviewable for the first time on appeal. *Madison* actually held that because the defense failed to object at trial, the issue was *not* preserved on appeal. *Dolan*, 118 Wn. App. at 329. *Dolan* also relied upon *Demery*, 144 Wn.2d at 765, which involved officers' taped statements that the plurality held did not even amount to "testimony." *Dolan*, 118 Wn. App. at 329.

¶59 Requiring an explicit or almost explicit statement by a witness is also consistent with this court's precedent that it is improper for any witness to express a personal opinion on the defendant's guilt. *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967); *State v. Trombley*, 132 Wash. 514, 518, 232 P. 326 (1925).

2. Actual Prejudice

 ¶60 It also appears from the respective records that defense counsel for both Kirkman and Candia chose not to object to the testimony for tactical reasons. Kirkman's defense counsel had determined to introduce other testimony of A.D.'s reputation for truthfulness. In *Candia*, some of the testimony was helpful to defendant, as the Court of Appeals conceded, stating that Dr. Stirling's testimony that it was unlikely the defendant could actually penetrate C.M.D. was "favorable to Candia." *Candia*, 2005 Wash. App. LEXIS 1871, at *4. Candia now seeks to appeal the admission of a portion of testimony "which [he] obviously wanted to use in challenging his accuser's credibility." *Id.* at *26 (Quinn-Brintnall, C.J., dissenting).

 ¶61 The record in each case also establishes that each jury received specific instructions that they were the sole triers of fact and the sole deciders of the credibility of witnesses. Jury instruction 1 states that jurors "are the sole judges of the credibility of the witnesses and of what weight is to be given to the testimony of each." Clerk's Papers (CP) at 130. Jury instruction 6 states that jurors "are not bound" by expert witness opinions but "determin[e] the credibility and weight to·be given such opinion evidence." CP at 136. Jurors are presumed to follow the court's instructions. *See Candia*, 2005 Wash. App. LEXIS 1871, at *13. This court has even found such instructions relevant (and curative) in claims of judicial comment on the evidence. *See Ciskie*, 110 Wn.2d at 283.

### 3. Role of the Jury

 ¶62 This court's decision respects both the constitutional role and the assumed abilities of juries. The right of jury trial:

> "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary."

*State v. Evans*, 154 Wn.2d 438, 445, 114 P.3d 627 (2005) (quoting *Blakely v. Washington*, 542 U.S. 296, 305-06, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)). Juries embody "the commonsense judgment of the community." *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). Only with the greatest reluctance and with clearest cause should judges—particularly those on appellate courts—consider second-guessing jury determinations or jury competence. As Judge Learned Hand wrote, "Juries are not leaves swayed by every breath." *United States v. Garsson*, 291 F. 646, 649 (D.N.Y. 1923).

¶63 There was no explicit statement of opinion on the credibility of the defendants or victims by these witnesses and no objections at trial (for tactical reasons). Thus, there were no manifest constitutional errors in either Kirkman's or Candia's case.

### Conclusion

¶64 This court holds that testimony of an investigating officer or examining doctor if not objected to at trial does not necessarily give rise to a manifest constitutional error. Manifest error requires an explicit or almost explicit witness statement on an ultimate issue of fact. We reverse the Court of Appeals in both *Kirkman* and *Candia*. The convictions on both cases are affirmed.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶65 CHAMBERS, J. (concurring) — I concur with the majority opinion. I write separately to respond to the suggestion of my learned friend Justice Sanders that the majority "permits the admission of expert testimony concerning the credibility of a criminal defendant's accuser." Dissent at 940. I disagree.

¶66 Neither the majority nor I condones an expert witness commenting on another witness's credibility when credibility has not been made an issue at trial. Such testimony will all too often be prejudicial, especially when clothed in the uniform of a doctor or a police officer. *See generally State v. Demery*, 144 Wn.2d 753, 765, 30 P.3d 1278 (2001). But this question is not before us because the experts in these cases did not comment upon the children's credibility.

¶67 Experts are permitted to testify on subjects that are not within the understanding of the average person. ER 702; *see also State v. Petrich*, 101 Wn.2d 566, 575-76, 683 P.2d 173 (1984) (finding no abuse of discretion in allowing expert to testify that sexually abused children often do not promptly report the abuse). We allow experts to express opinions concerning their fields of expertise when those opinions will assist the trier of fact. ER 702; *cf.* ER 701.

¶68 Often, it would be very helpful to the judge or jury to know whether a statement, condition, or alleged fact is consistent with the other evidence in the case or similar cases. *E.g., State v. Florczak*, 76 Wn. App. 55, 73, 882 P.2d 199 (1994). A properly offered expert opinion on whether a child's demeanor during an investigatory interview was (or was not) consistent with what the expert would expect is not a comment on the child's credibility.

¶69 That a statement, condition, or alleged fact is consistent or inconsistent with the expert's observations or opinions may be a comment on the reliability of the statement, condition, or alleged fact, but is not a comment on the credibility of the witness. The mere fact that one witness disagrees with another does not mean one witness is commenting on the credibility of the other. Neither is an expert's opinion on whether (or not) the child's physical

condition was consistent with that of a child who had been sexually abused a comment on credibility. These are simply opinions based on knowledge outside the understanding of the average person that could "assist the trier of fact to understand the evidence." ER 702.

¶70 It was not an abuse of discretion to admit the expert testimony. I concur.

¶71 SANDERS, J. (dissenting) — The majority permits the admission of expert testimony concerning the credibility of a criminal defendant's accuser. The Sixth Amendment to the United States Constitution, however, prohibits expert testimony concerning the credibility of a criminal defendant's accuser as "unfairly prejudicial." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Both Charles Kirkman and Ruben Juarez Candia were convicted on the basis of a doctor's testimony concerning their accusers' credibility. Both are entitled to a new trial. Accordingly I dissent.

¶72 The admission of testimony concerning the credibility of a criminal defendant's accuser unconstitutionally invades the province of the jury. Under the Sixth Amendment, the jury must remain " 'the sole judge of the weight of the testimony and of the credibility of the witnesses.' " *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995) (quoting *State v. Crotts*, 22 Wash. 245, 250-51, 60 P. 403 (1900)). Therefore "[n]o witness, lay or expert, may testify to his opinion as to the guilt of a defendant, *whether by direct statement or inference.*" *Black*, 109 Wn.2d at 348 (emphasis added) (citing *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967)). Here, the trial courts admitted Dr. John Stirling's testimony concerning his opinion of the credibility of Kirkman's and Candia's accusers.

¶73 The majority characterizes Stirling's testimony as "content neutral," suggesting he didn't discuss the "substance" of the accusations against Candia. Majority at 933. But Stirling was only qualified—and only permitted—to discuss the "substance" of the accusations, namely whether or not physical evidence of sexual abuse existed. And yet,

his testimony addressed the credibility of the accusers, a question entirely unrelated to his medical examination. Stirling testified he believed Kirkman's accuser, even though he conceded no physical evidence supported her accusations. And he testified the behavior of Candia's accuser was consistent with the behavior of a victim of sexual assault.

¶74 None of this testimony reflects legitimate medical findings. The *absence* of physical evidence cannot support a medical finding of sexual assault. And as we recognized in *Black*, "the State may not introduce expert testimony which purports to scientifically prove" an alleged crime victim's "emotional or psychological" state reflects the truth of an allegation. 109 Wn.2d at 349. An expert witness may provide an expert opinion on matters legitimate within his or her field of expertise. But only the jury may evaluate the credibility of a witness. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001).

¶75 Nor can the majority dismiss a constitutional violation as harmless error. "It is true enough that the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 2562, 165 L. Ed. 2d 409 (2006). On the contrary, "[i]t commands, not that a trial be fair, but that a particular guarantee of fairness be provided." *Id.* One element of this guaranty is the right to trial by a free and independent jury. " 'The safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded . . . .' " *State v. Reeder*, 46 Wn.2d 888, 893, 285 P.2d 884 (1955) (quoting *State v. Montgomery*, 56 Wash. 443, 447, 105 P. 1035 (1909)). We must not disregard them here.

¶76 I dissent.