2013 JUN 17 AM 8:58

COURT OF APPEALS DIV I
STATE OF WASHINGTON

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 68136-2 |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GENE M. FULTON, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 17, 2013 |
| | ) | |

DWYER, J. — Gene Fulton appeals from his conviction of burglary in the second degree arising from an incident in which he entered an unoccupied residence that was under construction and removed a washer and dryer set. He contends that the trial court denied him a fair trial by admitting testimony that constituted an improper opinion on guilt. Because no such impermissible opinion was offered, we affirm.

I

On July 13, 2010, at approximately 1:00 a.m., Barbara Mae Solari was smoking a cigarette on the front porch of her home when she noticed a white truck slowly drive into the housing development in which she resided. Solari observed that two individuals were inside the truck and that its headlights were turned off.

Because Solari was unusually familiar with cars and trucks, she was able to determine that the vehicle entering the housing development was a small, white utility truck from the early 1990s, had a single cab, and had a four-cylinder engine. Solari also heard a distinct, constant rattle emanating from the truck, which she believed originated from the middle or front of the truck as it was moving. She believed that the rattling sound indicated a defect in the truck's catalytic converter.

Solari saw the truck back into the driveway of a nearby house in the housing development. As with many other residences in the development, this home was still under construction and unoccupied. After the truck parked in the driveway, Solari watched as two men exited the truck and entered the home. She had a clear view of the scene, as she observed the men's actions.

Suspicious of such activity, Solari called 911. She informed the operator of the activities she had seen and provided a description of the truck. Solari stayed on the telephone while she watched the men, and continued to relay to the operator what she was observing. Although Solari was unable to discern the men's facial features, she noted that they were Caucasian, of average build, and between 5'7" and 6'1". She also noticed that one man was dressed in a white shirt and jeans, and that the other man was wearing darker clothing.

The two men soon emerged from the home carrying a large white box. Solari perceived the box to be an appliance, such as a washer or dryer. The men loaded the box into the back of the truck, returned inside the home, and appeared outside with another large box. After they stowed the second box in

the back of the truck, the two men entered the vehicle and drove away from the home with the truck's headlights turned off. Solari reported to the 911 operator the direction in which the truck was moving once it left the housing development. She knew the truck's direction of travel because she could hear the rattling of the catalytic converter as the truck drove away in the morning quiet.

Officers from the Auburn Police Department arrived at the housing development shortly thereafter and spoke with Solari about her observations. Sergeant Mark Caillier investigated the burglarized home and discovered that the doors were unlocked and that all of the appliances were in place except for the washer and dryer.

Police officers also began conducting checks in the area for a truck matching the description provided by Solari. Shortly after Officer Tillman Atkins received the dispatch concerning the vehicle, he saw a white Ford Ranger pickup truck driving southbound on the freeway. The truck was an older model with what he believed to be a very loud exhaust. Officer Atkins stopped the vehicle and subsequently discovered a new washer and dryer set located in the back of the truck. Fulton was the truck's driver. Cory Stobie was its passenger.

When Sergeant Caillier learned that Officer Atkins had stopped a pickup truck that corresponded with Solari's description of the suspect vehicle, he instructed Officer Jamie Douglas to respond to the location at which Fulton and Stobie were detained. Officer Douglas arrived shortly thereafter to direct the investigation.

The following day, the construction manager of the housing development

compared the serial numbers of the washer and dryer that were found in the back of Fulton's truck with the set that was installed in the burglarized residence. The numbers were identical.

On July 16, 2010, Fulton and Stobie were charged with one count of second degree residential burglary. The information was subsequently amended to one count of burglary in the second degree to reflect the fact that the building they had entered was not an occupied dwelling. Stobie and Fulton were prosecuted in a joint trial that commenced on October 31, 2011. During direct examination, Officer Douglas testified that upon arriving at the location at which Fulton and Stobie were detained, he noticed that Fulton's truck matched the description of the suspected vehicle that police were searching for that night. The following exchange then took place:

> Q. What were you thinking when you came upon the scene and saw what you described to us?
> A. Based on the totality of everything I'd been given and what I saw, this was the suspect vehicle and [inaudible].
> [Defense Counsel]: Objection, your Honor. I think that the answer calls for something that the jury needs to decide and not this officer. Apparently the question is along the lines of did we get the right people. I think that's a question that other people have to answer, not this officer.
> [Prosecutor]: Obviously . . . the jury will ultimately decide . . . whether or not the law enforcement obtained the correct individuals, but nevertheless, his thinking during the course of this investigation is extremely relevant to the facts of this case.
> The court: I'm going to allow. Overruled.
> Q. Pardon me, officer, so you had indicated based on the totality of what you knew about the situation?
> A. That the, this was the suspect vehicle and that these two are the suspects.
> Q. Did you have any reason to doubt that?
> A. No.

Fulton subsequently testified at trial. He testified that on the evening of July 12, 2010, after gambling for several hours, he left the casino to meet with his friend, Stobie, at a sports bar. When he pulled into the sports bar's parking lot, he recognized two men who were parking their white or tan truck near his truck. Fulton testified that he did not know their names, but had previously seen them at the casino.

According to his testimony, the two men offered to sell Fulton a washer and dryer set that was located in the back of their truck. Fulton stated that he paid $240 in cash for the appliances after negotiating the price with the two men. He did not ask the men where they acquired the machines. Fulton claimed that he bought the appliances for his friends who were in need of a washer and dryer. However, he did not know these friends' surnames. After the men moved the washer and dryer into the bed of his truck, Fulton testified, he found Stobie inside the bar, and they left. While en route to Stobie's house, Fulton was pulled over and arrested.

The jury found Fulton guilty as charged. He was thereafter sentenced to 12 months plus one day of incarceration.

## II

Fulton contends that Officer Douglas's challenged testimony constituted an impermissible opinion on guilt that denied him a fair trial. We disagree. No such impermissible opinion on guilt was offered.

Evidence Rule (ER) 701 permits testimony "in the form of opinions or inferences" that are "rationally based on the perception of the witness" and

- 5 -

"helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Moreover, "[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704. However, generally, no witness may offer an opinion regarding the defendant's guilt or veracity. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); State v. Rafay, 168 Wn. App. 734, 805, 285 P.3d 83 (2012), review denied, 176 Wn.2d 1023 (2013). Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury. Kirkman, 159 Wn.2d at 927; Rafay, 168 Wn. App. at 805. A police officer's opinion testimony regarding the veracity of another witness raises additional concerns because "an officer's testimony often carries a special aura of reliability." Kirkman, 159 Wn.2d at 928.

Nonetheless, opinion testimony that is based on inferences from the evidence, does not comment directly on the defendant's guilt or veracity, and is otherwise helpful to the jury, does not constitute an opinion on guilt. Rafay, 168 Wn. App. at 806. "The fact that an opinion supports a finding of guilt . . . does not make the opinion improper." State v. Collins, 152 Wn. App. 429, 436, 216 P.3d 463 (2009).

When evaluating alleged opinion testimony, courts may consider the type of witness, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Trial courts have wide discretion to determine the admissibility of evidence. State v. Demery, 144

Wn.2d 753, 758, 30 P.3d 1278 (2001). Therefore, we review a trial court's ruling on the admissibility of opinion evidence for an abuse of discretion. Demery, 144 Wn.2d at 758.

Here, Officer Douglas testified at trial that "this was the suspect vehicle and that these two are the suspects." Fulton asserts that this testimony constituted an improper opinion of guilt. In so contending, Fulton interprets the officer's testimony as an opinion that the police "had caught the perpetrator."

However, the challenged testimony was not a statement of the officer's belief as to Fulton's guilt. Officer Douglas neither used the word "perpetrator" nor "guilt" when referring to Fulton in the challenged testimony. Nevertheless, Fulton mistakenly likens the term "suspect" to "perpetrator" in order to support his contention that the officer offered an opinion on Fulton's guilt. But these two words are not commonly understood to be synonymous. While the plain meaning of the term "perpetrator" is often understood as a person who has carried out a criminal or illegal act, the term "suspect" ordinarily denotes an individual who is believed to have carried out such an act, but whose guilt is not yet confirmed. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2303, 1684 (2002).

Here, the challenged testimony merely reflected that, upon his arrival at the location in which the defendants were detained, Officer Douglas was satisfied that he had encountered the suspects described by a witness to a burglary. This view was based on his belief at the time that his observations of Stobie, Fulton, and Fulton's truck corresponded with the description of the suspects and suspect

vehicle that had been previously provided to him by the dispatcher. Moreover, at that point in the trial, it can be fairly said that the jury was already aware that Fulton was suspected of committing the burglary, and, as the prosecutor indicated, that the jury would ultimately decide whether or not Fulton was guilty as charged.

Nor did the officer's statement concern an opinion on the veracity of Fulton's testimony regarding his activities on the evening of July 12, 2010 and the early morning of July 13, 2010. Fulton testified after Officer Douglas at trial. Indeed, the officer's statement was "based on the totality" of the circumstances at the time of the investigation, which included his receipt of Solari's description of the suspects and the suspect vehicle, as well as his subsequent observations of Stobie, Fulton, and Fulton's truck. Officer Douglas's testimony that, out on the street, he believed that he was viewing the suspects, in no way commented on the alternative explanation offered by Fulton as to how the washer and dryer came to be in his truck's bed. At the time referenced in the officer's testimony, Fulton's explanation of how he came to possess the washer and dryer had not yet been offered to either the officers at the scene or the jury in the courtroom. Officer Douglas's testimony was neither an opinion on guilt nor an opinion on Fulton's veracity as a witness.

Testimony that Fulton was a "suspect" and that his truck "was the suspect vehicle" cannot reasonably be construed as direct comments on the guilt or veracity of Fulton. There was no trial court error in the admission of the challenged testimony.

- 8 -

Affirmed.

Dwyer, J.

We concur:

Leach, C.J.

Cox, J.