# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Matter of the Dependency of
F.G. and J.G., minors

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

          Respondent,

          v.

JASMINE WEBSTER,

          Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NOS. 71015-0-I
     71016-8-I
(Consolidated Cases)

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 28, 2014

LAU, J. — Jasmine Webster challenges her dependency order, arguing that the frequency of visitation with her children violates RCW 13.34.136. Because Webster raises this issue for the first time on appeal, we decline to consider the asserted error, and we affirm.

## FACTS

Jasmine Webster is the mother of two boys, eight-year-old JG and five-year-old FG. Both children suffer from developmental delays, posttraumatic stress disorder, and

behavioral problems, among other issues. The Washington State Department of Social and Health Services (DSHS) has been involved with the family since JG's birth based upon Webster's cognitive and mental health issues and inability to protect the children by exposing them to domestic violence perpetrated on Webster by the children's father.[1] Webster relied heavily on family members to assist her in parenting the children.

In August 2012, after a particularly severe domestic violence incident, Webster and the children left the father's home and moved in with Webster's grandmother Sonia Utley and her partner. At that time, Webster was subject to a less restrictive order issued by the mental health court, which stated that Webster had to reside with Utley and the children, take her medication, remain mental health treatment compliant, and continue her financial arrangement with a payee. Webster, however, had a pattern of leaving Utley's home and returning to the children's father for days at a time. This pattern caused the children significant harm.

In April 2013, Utley requested that the children be removed because she was no longer able to provide appropriate care for them. DSHS filed a petition alleging that JG and FG were dependent under RCW 13.34.030(6)(c), which provides that a child is dependent if there is "no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."

In May 2013, DSHS social worker Megan Stampfli was assigned to the cases of JG and FG. During supervised visits, Stampfli observed that the children often

---

[1] The children were found dependent as to their father by default. He did not appeal the dependency order.

displayed aggressive, violent, and destructive behaviors. She frequently had to intervene to assist Webster in parenting the children. Due in large part to the children's behavior, Stampfli had to move the children to eight different foster care homes before they stabilized at a foster home in Yakima.

Supervised visitation between Webster and her children was set at twice a week for two hours. Webster was opposed to traveling to Yakima, so DSHS transported the children from Yakima to the Seattle area. Travel time for the children was approximately five hours per visit. Because the lengthy traveling time was difficult for the children, DSHS filed a motion to reduce the visits to twice a month for four hours per visit. On July 22, 2013, at a motion hearing set to determine visitation, an agreed order was entered reducing visitation to two times per month. During a supervised visit on August 25, 2013, the children's guardian ad litem (GAL) observed that Webster had minimal engagement with her children and that the visitation supervisor had to intervene frequently to parent the children. DSHS subsequently lost contact with Webster, and she did not visit the children at all in September 2013.

The trial court held a dependency and disposition trial on September 12 and 16, 2013. By that time, the children had been in the same foster home in Yakima for over two months. DSHS was unable to locate Webster, and she did not appear at either hearing. The GAL recommended that visitation be set at twice per month, with Webster traveling to Yakima for one of the visits. Webster's attorney replied:

> I'm in an awkward—well, I don't have a lot of direction from my client as to any services she's willing to participate [in] or the visitation. So, I guess it may be important for the Court to know we previously have agreed to the visitations suggested by the Department.

RP (Sept. 16, 2013) at 211.

The only aspect of visitation that Webster's attorney objected to was the GAL's recommendation that Webster be required to travel to Yakima. The court granted the GAL's request that one of the two monthly visits take place in Yakima, with Webster traveling there by bus.

On October 3, 2013, the court issued an order of dependency. The court found that Webster is not capable of meeting the children's basic needs due to her cognitive and mental health issues. The court also found that Webster cannot adequately and safely care for the children, that she cannot maintain her own stability, and that she continues to have a destructive relationship with the children's father. Regarding visitation, the trial court ordered:

> During the time the children are placed in Yakima, two times per month supervised by DCFS or its designee. The mother and children shall alternate traveling for the visits so the burden of traveling is shared. The mother shall travel to the children for one visit per month and the children shall travel to the mother for one visit per month. The Department shall pay for the mother's bus ticket once per month to travel for the visit with the children.
>
> If a placement located closer to the mother becomes available that is appropriate for the children, the mother shall have visits twice per week for two hours each visit supervised by DSHS or designee.

Webster appeals.

<u>ANALYSIS</u>

For the first time on appeal, Webster argues that the trial court erred in restricting supervised visits to twice a month. RCW 13.34.136(2)(b)(ii) provides that DSHS "shall encourage the maximum parent and child and sibling contact possible, when it is in the best interest of the child . . . . " Based on this standard, Webster asserts that if she is

able to travel to Yakima, she should be allowed to see her children as much as possible.

The State argues that Webster waived the asserted error by failing to raise it below. We agree. "The general rule is that appellate courts will not consider issues raised for the first time on appeal." State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). However, "[a] party may raise for the first time on appeal a manifest error affecting a constitutional right." In re Adoption of M.S.M.-P, ___ Wn. App. ___, 325 P.3d 392 (2014); RAP 2.5(a)(3). "We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "A manifest error requires a showing of actual prejudice." M.S.M.-P, 325 P.3d at 398. Actual prejudice requires a "plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case." Kirkman, 159 Wn.2d at 935, quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999).

Webster has not shown manifest error affecting a constitutional right. First, we note that Webster provided no argument whatsoever regarding RAP 2.5(a)(3). Second, Webster fails to assert that frequency of visitation is an error of constitutional magnitude. Her arguments are based solely on her claim that the frequency of visitation constituted a statutory violation. Third, Webster fails to show that the claimed error had practical and identifiable consequences. "To determine whether an error is practical and identifiable, the appellate court must put itself in the shoes of the trial court to ascertain whether, given what the trial court knew at the time, the court could have corrected the error." M.S.M.-P, 325 P.3d at 398. The record shows that at the time of

the dependency and disposition hearings, (1) DSHS had been unable to contact Webster, (2) Webster failed to appear, (3) Webster had previously agreed to twice a month visits, and (3) Webster's attorney opposed the GAL's recommendation that Webster travel to Yakima for one of the two monthly visits. Given what the trial court knew at the time of trial about Webster's interest in visitation, it had no basis on which to decide that Webster might demand additional visitation, let alone correct it.

## CONCLUSION

Webster shows no asserted error falling within the RAP 2.5(a)(3) exception to the general rule barring review of claims raised for the first time on appeal. We affirm.

_____

WE CONCUR:

_____          _____