# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| OLIVIA LEONORA LAUIFI, | No. 59204-5-II |
| Respondent, | |
| v. | |
| DONALD BLACKBURN, | |
| Appellant. | |
| MALAESALA ANTHONY LAUIFI, | Consolidated with No. 59214-2-II |
| Respondent, | |
| v. | |
| DONALD BLACKBURN, | UNPUBLISHED OPINION |
| Appellant. | |

CHE, J . — Donald Blackburn appeals two Domestic Violence Protection Orders

(DVPOs) that prohibit him from contacting his wife, Olivia Lauifi, and stepson, Malaesala

Lauifi, respectively.[1]

---

[1] Blackburn appealed both DVPOs, and the cases were consolidated. Ruling Granting
Consolidation (Oct. 7, 2024).

In 2023, Olivia and Malaesala[2] filed separate petitions for DVPOs against Blackburn. When deciding whether to grant Olivia's petition, the trial court considered a 2015 petition for a DVPO that Olivia had filed against Blackburn, which neither party had submitted under the 2023 petition. It also considered Olivia's and Malaesala's petitions together. It granted both petitions for DVPOs.

Blackburn argues that the trial court abused its discretion and violated his due process rights by considering Olivia's 2015 petition. He further argues that the trial court abused its discretion by considering Olivia and Malaesala's petitions together. However, because Blackburn failed to preserve either of these arguments, we decline to consider the merits of his claims under RAP 2.5(a).

Accordingly, we affirm both DVPOs.

FACTS

Blackburn and Olivia Lauifi dated for several years before marrying in May 2023. At some point in the relationship, Blackburn and Olivia began living together in a home with Olivia's son, Malaesala.

In October of 2023, Olivia filed a petition for a DVPO against Blackburn. Under "Past Incidents," Olivia disclosed, "I have had to get a restraining order after he broke my hand." Clerk's Papers (CP) (59204-5-II) at 7.[3] Under "Most Recent Incident," she wrote, "[f]ear of

---

[2] Because both Respondents share the same last name, we use their first names in this opinion. No disrespect is intended.

[3] This consolidated appeal includes separate clerk's papers and reports of proceedings from both appeals. We refer to CPs and RPs by their initial case number for reference clarity.

threat of violence" and "[c]oercive control." CP (59204-5-II) at 7. The same day, the court issued a temporary protection order and hearing notice. Under the "Findings" section of the temporary order, the court stamped, "JIS [Judicial Information System]/JABS [Judicial Access Browser System] Reviewed." CP (No. 59204-5-II) at 14. The court further wrote, "see 2015 DVPO filed." CP (No. 59204-5-II) at 15.

No party filed any 2015 DVPO documents as part of the 2023 petition, but Blackburn later designated the 2015 petition and order of dismissal as part of the appeal file.

In Olivia's 2015 petition for a DVPO against Blackburn, she alleged that Blackburn "broke my hand. He's also choked my nephew. . . . Lately he's been real agitated. Today I was home filling out a report with an officer . . . when [Blackburn] came home. After the officer left I received threats from [Blackburn] about why the officer was at the house. I don't feel safe with him around after he found out that I was filling out a report about these incidents going on." CP (No. 59204-5-II) at 150. Olivia also alleged that Blackburn "shoved me around in our room when I was packing my belongings to leave him. The last time he shoved me hard enough that my hand hit a wood bench in the room and broke my hand." CP (No. 59204-5-II) at 150. Ultimately, the trial court dismissed Olivia's 2015 petition because she failed to appear at the hearing.

In ensuing declarations to her 2023 petition, Olivia described additional encounters between herself and Blackburn and alleged he had "been abusive psychologically, physically, and sexually." CP (No. 59204-5-II) at 10 (capitalization omitted). Olivia also alleged Blackburn assaulted Malaesala.

Blackburn filed a responsive declaration to Olivia's petition, noting that Olivia had recently filed for divorce. Upon his filing, the trial court provided a hearing information form. The bottom portion of the form stated, in pertinent part, "[t]he Court may . . . consider other pleadings in this case and other civil and criminal files where the litigants and/or child(ren) are identified as parties." CP (No. 59204-5-II) at 45.

In November of 2023, Malaesala also filed a petition for a DVPO against Blackburn. In the petition, Malaesala described the alleged physical altercations that occurred between him and Blackburn while they were living together earlier that year. The petition included one alleged incident where Blackburn pushed Malaesala against a wall and strangled him, as well as another alleged incident where Blackburn pushed Malaesala to the ground outside. The same day, the court issued a temporary protection order and hearing notice. Under the "Findings," the court stamped, "JIS/JABS Reviewed." CP (No. 59214-2-II) at 10. The court further wrote, "see his mother's petition," including the case number for Olivia's 2023 petition. CP (No. 59214-2-II) at 11.

In January 2024, the trial court held hearings on both petitions.

At the outset of the hearings, Blackburn's counsel stated that she had been unable to serve Blackburn's response on Malaesala before the hearing date. However, she concluded that she could email the response to Malaesala for his review during Olivia's portion of the hearing. The trial court stated, "I'm not going to do them separately, so I'm going to hear them together. Let me pull the cases. We may need to continue them both just so that you have an opportunity to respond to both." Rep. of Proc. (RP) (No. 59204-5-II) at 4. However, after confirming that

4

both petitioners were prepared to proceed, the trial court began with Olivia's portion of the

hearing.

During Olivia's testimony, the following exchange occurred between Olivia and the trial

court:

> [OLIVIA]: I've had a restraining order on him before.
> [COURT]: Where was that?
> [OLIVIA]: That was in our townhouse when he broke my hand.
> [COURT]: Do you have an approximate date? I have several protective
> orders between the two of you. Was it 2000 —
> [OLIVIA]: 2016 or '15.
> [COURT]: 2015. Yep.

RP (No. 59204-5-II) at 6. Later, Blackburn testified in response.

After both Blackburn and Olivia concluded their testimony, the trial court issued its oral

ruling on Olivia's petition. The trial court, in pertinent part, ruled,

> I do think things are amping up. I've read the petition that was filed back
> in 2015, as well as heard from the parties, as well as an admission that he's on some
> kind of prescribed drugs. But I've also read this in conjunction with [Malaesala's
> case number] with regard to the stepson. In reading these cases altogether, I am
> finding that domestic violence has occurred. It doesn't have to be something new.
> In fact, the Court does have some concerns because there's really a pending
> dissolution action generally that will heighten things. There's case law out there to
> suggest that that will heighten the risk of abuse occurring. Those things combined,
> the Court is finding, and with a preponderance of the evidence, that there is a basis
> for an entry of an order.

RP (59204-5-II) at 10-11. The trial court granted Olivia a DVPO against Blackburn. Its written

findings concluded that Blackburn had committed domestic violence against Olivia. Its written

findings also stated, "prior history, see JABS," "detailed alleg[ations] in petition, "see also

[Malaesala's case number]," "pending possible divorce," and "some coercive [control]." CP

(No. 59204-5-II) at 173. At no point did Blackburn object to the trial court's consideration of the

5

2015 petition. Nor did he request an opportunity to be heard. Similarly, he raised no objection to the trial court's consideration of Olivia's and Malaesala's petitions together.

Next, the trial court heard Malaesala's petition. Malaesala testified about his reasons for seeking the DVPO, including the alleged physical altercations that had transpired between Blackburn and himself. In response, Blackburn's counsel presented argument. Blackburn declined the opportunity to testify in his defense. The trial court ruled, in pertinent part,

> What I read was a very detailed petition, and I heard a very detailed account today. I see nothing in the file, nor do I hear anything from your client, to suggest that that's not true, other than a blanket denial of what's happened.
> Based on the credibility of the parties, domestic violence has occurred.

RP (59214-2-II) at 5-6. The trial court granted Malaesala a DVPO against Blackburn. Its written findings concluded Blackburn had committed domestic violence against Malaesala. Its written findings also stated, "see detailed alleg[ations] in petition." CP (59214-2-II) at 53. Again, Blackburn did not object to the trial court's consideration of the two petitions together.

Blackburn appeals both DVPOs.

ANALYSIS

Blackburn argues the trial court abused its discretion by considering Olivia's 2015 petition for a DVPO and by considering Olivia's and Malaesala's petitions for DVPOs together. He further argues the trial court violated his due process rights by considering Olivia's 2015 petition for a DVPO. However, because he failed to preserve these arguments, we decline to consider their merits under RAP 2.5(a).

RAP 2.5(a) grants appellate courts discretion to "refuse to review any claim of error which was not raised in the trial court." In other words, "we may decline to review unpreserved errors." *State v. Clare*, 30 Wn. App. 2d 309, 315, 544 P.3d 1099 (2024). "'A party must inform

6

the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error.'" *Id.* (quoting *State v. Lazcano*, 188 Wn. App. 338, 355, 354 P.3d 233 (2015)). "However, a party may raise an unpreserved error if they show that the error presents a 'manifest error affecting a constitutional right.'" *Id.* (quoting RAP 2.5(a)(3)).[4] For an error to be manifest under RAP 2.5(a)(3), the appellant must show actual prejudice. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* at 935 (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). Critically, "a cursory reference to a constitutional provision may be inadequate to preserve an issue for appeal." *Clare*, 30 Wn. App. 2d at 316.

In this case, Blackburn did not object when the trial court considered Olivia's 2015 petition or when it considered Olivia's and Malaesala's petitions together. Therefore, both issues are being raised for the first time on appeal. Moreover, Blackburn fails to explain why we should consider these arguments for the first time on appeal or whether any exception in RAP 2.5(a)(1)-(3) should apply. And we do not see a viable exception to RAP 2.5(a) in relation to the Blackburn's arguments. In any event, Blackburn's failure to object deprived the trial court of the opportunity to correct any error.

Thus, we conclude that neither issue was properly preserved under RAP 2.5(a), and we decline to reach the merits of Blackburn's claims.

---

[4] The additional bases upon which an appealing party may raise an error for the first time on review are (1) lack of trial court jurisdiction and (2) failure to establish facts upon which relief can be granted. RAP 2.5(a)(2), (3).

Nos. 59204-5-II, 59214-2-II

CONCLUSION

Accordingly, we affirm both DVPOs.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Cruser, C.J.

8