# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48855-8-II |
| Respondent | |
| v. | |
| RICHARD IVER SVALESON, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Richard Iver Svaleson, Jr. appeals his conviction and sentence, arguing that (1) insufficient evidence supported the jury finding that he touched the child victim with intent to gratify his sexual desire; (2) the trial court erred in giving a non-corroboration jury instruction; (3) the trial court erred in allowing improper opinion testimony regarding standard child victim interviewing techniques and the diagnosis of acute stress disorder; (4) the prosecutor engaged in misconduct by (a) improperly shifting the burden of proof, (b) commenting on the victim's demeanor, and (c) urging the jury not to blame the victim; (5) defense counsel was ineffective for failing to object to the prosecutor's misconduct; (6) several community custody conditions were unauthorized by statute, were not crime-related, or were unconstitutionally vague; and (7) the sentencing court erred in imposing discretionary legal financial obligations without considering Svaleson's ability to pay. In a statement of additional grounds (SAG), Svaleson argues that: (1) the prosecutor engaged in misconduct by "prepping" the jury to overlook missing evidence; (2) his trial counsel was ineffective when he (a) failed to object to the prosecutor's line of questioning

on whether he was married to the victim, (b) failed to cross the State's experts, and (c) failed to call witnesses on Svaleson's behalf.

We hold that the community custody conditions related to alcohol, social networking websites, and businesses that promote the commercialization of sex were improperly imposed. We also hold that the remainder of the issues Svaleson raises in his direct appeal and SAG do not warrant reversal. Therefore, we affirm Svaleson's conviction, but reverse the trial court's imposition of certain challenged community custody conditions and remand with instructions to strike those community conditions consistent with this opinion.

FACTS

A.    THE INCIDENT

E.B.[1] was born in 2004. Svaleson was born in 1946.

E.B. lived with her parents and her older sister A.B. Because E.B.'s parents both worked, they often asked E.B.'s great-grandmother, Margaret, to watch the girls during school and summer breaks.

Margaret lived with her adult son, Svaleson. Though Svaleson lived in the house and was around when the girls visited, Margaret was solely responsible for watching E.B. and her sister. E.B. referred to Svaleson as "Uncle Dick." 4 Verbatim Report of Proceedings (VRP) (Feb. 29, 2016) at 346.

On December 30, 2014, E.B. and her sister were dropped off at Margaret's house. The girls spent the morning watching television. At one point, E.B. went into the kitchen to get

---

[1] Pursuant to this court's General Order 2011-1, we use initials for child witnesses in sex crimes.

something to eat. Svaleson was seated in the kitchen on a "spinning chair." 4 VRP (Feb. 29, 2016) at 353. Svaleson called E.B. over to sit on his lap. E.B. testified that once seated, Svaleson touched her "private areas." 4 VRP (Feb. 29, 2016) at 353. Svaleson reached his hands underneath E.B.'s shirt and touched her chest, with his hands directly touching her skin. In response, E.B. pushed his hands down. Svaleson then rubbed "near" E.B.'s legs "[i]n between [her] kneecap." 4 VRP (Feb. 29, 2016) at 359.

Later that same day, he touched "all" of her "private areas." 4 VRP (Feb. 29, 2016) at 369. Specifically, Svaleson touched the areas she "use[s] to go to the bathroom, number one and number two" over her jeans. 4 VRP (Feb. 29, 2016) at 369. Svaleson's touches made E.B. uncomfortable. E.B. did not tell Margaret or her sister what had happened, but instead told her mother in the car on the way home.

E.B.'s parents spoke with the law enforcement officers about what E.B. had told them about what happened with Svaleson. Svaleson was subsequently charged with one count of first degree child molestation.

B.    THE TRIAL

1. Testimony

At trial, E.B. testified to the facts discussed above. However, she had difficulty remembering several details of that day. For example, she could not remember if she was wearing anything underneath her shirt. She could not remember if Svaleson had said anything to her while he touched her. She also could not recall how long the contact lasted. Initially, E.B. testified that Svaleson "rubbed near [her] legs" after touching her chest, but that he did not touch near or on her private area where she "go[es] number one." 4 VRP (Feb. 29, 2016) at 359. Later, E.B. testified

3

that Svaleson touched all three of her private areas that day, but not at the same time she sat on his lap in the kitchen.

E.B.'s mother testified at trial that E.B. met with a forensic interviewer at the Child Advocacy Center named Stacia Adams. After the incident, E.B. began seeing a counselor named Linda Skinner.

Adams and Skinner also testified at trial. Adams testified that E.B. told her that her Uncle Dick had touched her chest and the private areas "where she peed and pooped from." 6 VRP (Mar. 2, 2016) at 594. In describing the interview process, Adams explained that she was trained to ask children open-ended questions to ensure she does not suggest information to them. Adams stated that this technique ensures "that the interview is going to be more accurate and we know that statistically." 6 VRP (Mar. 2, 2016) at 585. Adams also testified that she solicited narrative events from E.B. because "that's more accurate than saying, like, what usually happens, which would be a script memory." 6 VRP (Mar. 2, 2016) at 585-86. Svaleson did not object to this testimony.

Skinner testified that she began seeing E.B. after her mother reported concerning behavioral changes, including difficulty sleeping, nightmares, and fear of returning to her great-grandmother's house. The prosecutor asked Skinner if she had seen these kinds of behaviors before in other patients. The prosecutor also asked Skinner if these identified behaviors, based on her "education, training, and experience" were "common in people who have been sexually abused[.]" 5 VRP (Mar. 1, 2016) at 537. Skinner answered, "Yes," to both questions. 5 VRP (Mar. 1, 2016) at 537. Skinner also testified that she had diagnosed E.B. with "acute stress disorder," a diagnosis used when a traumatic experience has occurred. 5 VRP (Mar. 1, 2016) at 538. Svaleson did not object to this line of questioning.

Skinner also testified that during their sessions, E.B. stated that Svaleson had said, "Your hands are starting to get warm," as he reached his hands under her shirt. 5 VRP (Mar. 1, 2016) at 544. E.B. also told Skinner that Svaleson had "grabbed her butt and squeezed it and grabbed her vagina and squeezed that with both of his hands." 5 VRP (Mar. 1, 2016) at 544. Svaleson did not object to this testimony.

Svaleson testified and denied that he had ever invited E.B. to sit on his lap. He claimed that E.B. followed him into the kitchen and sat on his knee. There was no door between the kitchen and the adjacent living room, where E.B.'s sister was watching television. Svaleson also testified that E.B. had asked him to tickle her and that he tickled her rib cage near her armpit. According to Svaleson, as he tickled E.B., she turned sideways and "ran her breast into the edge of [his] thumb." 6 VRP (Mar. 2, 2016) at 639. Svaleson admitted that he pinched E.B.'s butt, but only to encourage her to stand up because she was hurting his knees. He denied that he touched or tickled E.B. to satisfy his sexual desire.

2. Jury Instruction

The State proposed a non-corroboration jury instruction. This instruction stated:

> In order to convict a person of child molestation in the first degree as defined in these instructions, it shall not be necessary that the testimony of the alleged victim be corroborated. The jury is to decide all questions of witness credibility.

CP at 36.

Svaleson objected to the proposed instruction, arguing that the Washington Supreme Court Committee on Pattern Jury Instructions had explicitly recommended against such instruction. The trial court allowed the instruction.

3. Closing Argument

The prosecutor began her closing argument by explaining the differences between direct and circumstantial evidence. She then argued that this case turned on whether the jury found that Svaleson had touched E.B.'s private areas to satisfy his sexual desires. The prosecutor urged the jury to use "common sense and make those reasonable inferences" when considering the testimony. 6 VRP (Mar. 2, 2016) at 650. She told the jury that E.B. had described sexual contact "and if you believe her, if you believe what she's described, ladies and gentlemen, you are satisfied beyond a reasonable doubt." 6 VRP (Mar. 2, 2016) at 652.

Later, the prosecutor addressed E.B. and Svaleson's testimony. 6 VRP at 660-61. She urged the jury to consider Svaleson's "motives, his bias, but also consider the reasonableness of his story." 6 VRP (Mar. 2, 2016) at 661. She also argued that E.B. had "no reason" to lie that Svaleson "touched her breasts with both hands, that he touched her vaginal area, her back private area." 6 VRP (Mar. 2, 2016) at 661. The prosecutor further argued that there was "[n]o reason for her to fabricate this," and "if what [E.B.] said happened happened, there's also no reason and no reasonable explanation as to why the defendant's hands would have found themselves in those areas." 6 VRP (Mar. 2, 2016) at 661.

The prosecutor also addressed E.B.'s delay in reporting the incident. She argued:

Obviously, this was not a comfortable place for her to be. It's an intimidating setting up there probably for anyone, but she's 11.

. . . .

Don't make this [E.B.]'s fault. There is testimony that, you know, there's a house phone. Why wouldn't you call? She didn't have a cell phone yet at the time. It's not [E.B.]'s fault she did not pick up the house phone and call her mom. She knew her mom was coming to get her at the end of the day, and she told her

mom pretty much as soon as she got in the car, but that aside, the defendant is the one who did this.

6 VRP (Mar. 2, 2016) at 659, 664-65.

The prosecutor argued that Svaleson was in court watching E.B. and listening to her, and urged the jury to "think carefully about her reactions, her responses to my questions, how quickly she basically shut off." 6 VRP (Mar. 2, 2016) at 659. Svaleson objected, arguing, "This calls for undue sympathy." 6 VRP (Mar. 2, 2016) at 659. The trial court overruled the objection.

In closing, defense counsel argued that Svaleson was merely tickling E.B., but that E.B. possibly misinterpreted the tickling. Defense counsel emphasized that the kitchen was "an open concept room where people could walk in and out without having to open a door or knock." VRP (Mar. 2, 2016) at 679. Defense counsel also emphasized E.B.'s failure to report what had happened until her mother picked her up nine hours later.

In rebuttal, the prosecutor argued that there is "no one set way that someone commits these crimes." VRP (Mar. 2, 2016) at 685. She also acknowledged that the jury may be wondering why Svaleson did this, but "[t]hat's not an element." VRP (Mar. 2, 2016) at 685. Instead, the prosecutor urged the jury to "use [its] common sense" when determining whether the touching was done for the purpose of gratifying sexual desire:

> [B]ecause you certainly don't need someone to testify for you in order to meet this element, an eleven-year-old saying he touched me and while he was doing this though [sic] he said he was doing it to satisfy his sexual desire. You don't need someone to say that. You infer it based on the context, common sense, common experiences why that touching occurred. And what I'm submitting to you is that the explanation of just the tickling, it doesn't make sense in this context.

VRP (Mar. 2, 2016) at 686-87.

The prosecutor concluded her rebuttal with:

7

Finally, defense counsel said there are reasonable doubts in this case. I submit to you there is not. Once again, the instructions tell you there's no need for corroboration. It's not required. There's no reason [E.B.] would have made these things up about him touching her other private parts. How she described the touching of her breast area is not consistent with what he said happened in tickling. If you believe her, you're convinced beyond a reasonable doubt, and that's all that's necessary. I ask that you hold him responsible.

VRP (Mar. 2, 2016) at 688.

C.    RELEVANT PORTIONS OF SENTENCING

The jury found Svaleson guilty as charged. The sentencing court imposed a 51 months to life sentence.

The sentencing court also imposed legal financial obligations of $500 Crime Victim Penalty Assessment, $200 criminal filing fee, $100 DNA testing fee, and "restitution which may be set by later order of the Court." CP at 86. Although the court referred to the $200 fee as "court costs" in its oral ruling, the judgment and sentence reflects a "$200 Criminal Filing Fee." VRP (Apr. 15, 2016) at 8 (sentencing); CP at 86. When asked by the State if the court was imposing DAC recoupment, the court responded, "[n]o, because of indigency." VRP (Apr. 15, 2016) at 8 (sentencing). The judgment and sentence shows that court-appointed attorney fees and defense costs were "waived by court, inability to pay." CP at 86.

The sentencing court also imposed a number of community custody conditions, including:

14.    Do not purchase, possess, or consume alcohol.
15.    Do not enter into any location where alcohol is the primary product, such as taverns, bars, and/or liquor stores.

       . . . .

23.    Do not go to or frequent places where children congregate, (I.E. Fast-food outlets, libraries, theaters, shopping malls, play grounds and parks, etc.) unless otherwise approved by the Court.

. . . .

27. You are also prohibited from joining or perusing any public social websites ([Facebook], Myspace, *Craigslist*, etc.), Skyping, or telephoning any sexually-oriented 900 numbers.

. . . .

29. Do not patronize prostitutes or any businesses that promote the commercialization of sex.

CP at 101-102.

Svaleson appeals.

ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE

Svaleson argues that the State presented insufficient evidence that he touched E.B.'s intimate or sexual parts "for the purposes of gratifying sexual desire of either party or a third party," as required by RCW 9A.44.010(2).[2]  Br. of Appellant at 16.  We disagree.

1.  Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and "determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt."  *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).  An insufficiency claim admits the truth of the State's evidence and all reasonable

---

[2] Svaleson also contends that the State failed to meet its burden of proof because it tried to shift the burden of proof by arguing that there was no reasonable explanation Svaleson touched E.B. other than to gratify his sexual desire.  Svaleson makes a similar argument in his prosecutorial misconduct claim.  We address Svaleson's burden shifting argument in the portion of the opinion addressing prosecutorial misconduct.

inferences that can be drawn from that evidence. *Id.* at 106. All such inferences " 'must be drawn in favor of the State and interpreted most strongly against the defendant.' " *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Direct and circumstantial evidence are equally reliable. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

We review a challenge to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We defer to the fact finder on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007). If there is insufficient evidence to prove an element of a crime, reversal is required. *State v. Smith*, 155 Wn.2d 496, 505, 120 P.3d 559 (2005).

2. The State Presented Sufficient Evidence of Sexual Gratification

A person commits first degree child molestation by having "sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "Sexual gratification" is a clarifying term meant to define the essential element of "sexual contact." *State v. Lorenz*, 152 Wn.2d 22, 34-35, 93 P.3d 133 (2004).

Svaleson relies on *State v. Powell*, 62 Wn. App. 914, 916, 816 P.2d 86 (1991), *review denied* 118 Wn.2d 1013 (1992), to argue the State presented insufficient evidence he touched E.B. with intent to gratify his sexual desire. In *Powell*, a fourth grade girl told her school counselor that in the weeks before Thanksgiving, Powell had hugged her around the chest as she was seated on his lap. 62 Wn. App. at 916. She also said that Powell placed his hand on the front and bottom of

her underpants, as he assisted her off of his lap. *Id.* On a separate occasion, Powell momentarily touched both the girl's thighs on the outside of her clothing while they were alone in his truck. *Id.*

The *Powell* court held these contacts were insufficient to show the defendant touched the girl with the intent to gratify his sexual desire. *Id.* at 917-18. The court held that proof an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference it was done for sexual gratification. *Id.* at 917. But additional evidence of intent was required when the contact was over the child's clothing. *Id.* The court noted the evidence against Powell was "equivocal" and only suggested a "fleeting touch" over clothing. *Id.* at 917-18. Because there was no additional evidence aside from the fleeting touches over the child's clothing, such as threats, bribes, or requests not to tell being made, the *Powell* court reversed the first degree child molestation conviction. *Id.* at 918.

Here, unlike in *Powell*, the evidence showed more than a "fleeting touch" over clothing. The State presented evidence Svaleson touched E.B.'s breasts with both hands underneath her clothing. Even Svaleson admitted that he directly touched E.B.'s breast with his thumb. Under *Powell*, this evidence of direct contact to E.B.'s breasts supported the inference it was done for the purposes of gratifying sexual desire. The State also presented evidence that immediately after touching her breast, Svaleson rubbed "between [her] kneecap," and grabbed and squeezed both her butt and vagina. 4 VRP (Feb. 29, 2016) at 359. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found Svaleson touched E.B. for the purpose of gratifying his sexual desire.

Svaleson claims the evidence here was "highly equivocal" because the kitchen was not a private space and because E.B. failed to tell her mother or sister immediately after the contact

occurred. Br. of Appellant at 18. But *Powell* does not stand for the proposition that the State must present evidence of sexual contact in a private space or evidence the child victim immediately reported the incident to meet its burden. Although the *Powell* court considered the lack of evidence, such as threats or bribes, it never scrutinized the time it took the child victim to report the abuse. 62 Wn. App. at 917-18. Further, the court never suggested that a child's delay in reporting sexual abuse indicated sexual contact never occurred. *Id.* Thus, Svaleson's reliance on E.B.'s nine hour delay in reporting the incident is unavailing.

Therefore, we hold that Svaleson's challenge to the sufficiency of the evidence fails.

B.      NON-CORROBORATION JURY INSTRUCTION

Svaleson argues the trial court unconstitutionally commented on the evidence by giving a non-corroboration instruction. We disagree.

1. Standard of Review

We review a challenged jury instruction de novo. *State v. Jackman*, 156 Wn.2d 736, 743, 132 P.3d 136 (2006), *as corrected* (2007). In doing so, we consider the context of the jury instructions as a whole. *Id.*

2. The Non-Corroboration Instruction was not a Comment on the Evidence

Article IV, section 16 of the Washington Constitution prohibits a judge from " 'conveying to the jury his or her personal attitudes toward the merits of the case.' " *Id.* at 743-44 (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). Such comment on the evidence need not be explicit. *Id.* at 744. A trial court impermissibly comments on the evidence if it implies an "attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Johnson*, 152 Wn. App. 924, 935, 219 P.3d 958 (2009)

(quoting *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995)). Conversely, a jury instruction is not an impermissible comment on the evidence where sufficient evidence supports the instruction and it is an accurate statement of the law. *Id.*

The Washington Supreme Court addressed the use of a non-corroboration jury instruction in a child sexual abuse case in *State v. Clayton*, 32 Wn.2d 571, 572, 202 P.2d 922 (1949). There, Clayton was charged with "an unlawful and felonious attempt to carnally know and abuse a female child, not his wife, of the age of fifteen years." *Id.* At trial, the jury was given the following instruction:

> You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act.

*Id.*

Clayton admitted that the instruction was a correct statement of the law, but he argued that the trial court impermissibly commented on the evidence by singling out the State's evidence. *Id.* at 572-73. The court rejected Clayton's argument, finding that the jury must have understood that it was to determine Clayton's guilt or innocence from all the evidence presented. *Id.* at 577. Further, the second sentence in the instruction made clear that the jury were the sole judges of the weight to be given to the witness testimony. *Id.*

Aside from *Clayton*, the Washington Supreme Court has not addressed the use of a non-corroboration jury instruction in child sexual abuse cases. Notably, the Washington Pattern Criminal Jury Instructions (WPIC) do not include a corroboration instruction and the Washington

Supreme Court Committee on Jury Instructions has explicitly recommended against such instruction, finding corroboration to really be a matter of sufficiency of the evidence. *State v. Zimmerman*, 130 Wn. App. 170, 182, 121 P.3d 1216 (2005), *review granted*, *cause remanded*, 157 Wn.2d 1012, 138 P.3d 113 (2006).

In *Zimmerman*, the defendant was convicted of first degree child molestation. *Id.* at 173. This court shared the Committee's misgivings on including the non-corroboration instruction, but held that the instruction was not an improper statement on the evidence. *Id.* at 182.[3]

Svaleson argues that *Zimmerman* and *Clayton* are either "distinguishable or no longer good law." Br. of Appellant at 29. But the holdings in these cases have yet to be reversed or reconsidered. Also, the instruction given here is not "markedly different" than the instruction in *Clayton*. Br. of Appellant at 31. Like the instruction given in *Clayton*, the instruction here explicitly instructed the jury to resolve all questions of witness credibility. Thus, we hold that the non-corroboration instruction in this case was not an improper comment on the evidence.

---

[3] Similarly, in *Johnson*, this court again held that it was bound by *Clayton* despite reservations in allowing a non-corroboration instruction. 152 Wn. App. at 935-36. The *Johnson* court also rejected the defendant's argument that a non-corroboration instruction required the qualifying language of the instruction in *Clayton* that credibility determinations remained with the jury. *Id.* at 936.

Most recently, Division One of this court addressed a non-corroboration jury instruction in an incest case. *State v. Chenoweth*, 188 Wn. App. 521, 535-36, 354 P.3d 13 (2015), *review denied*, 184 Wn.2d 1023, (2015). The *Chenoweth* court acknowledged the Committee's misgivings on including such an instruction, noting that the *Zimmerman* and *Johnson* courts had shared those misgivings. *Id.* at 536. Nonetheless, the *Chenoweth* court held that such instruction was an accurate statement of the law and concluded that its use was not a comment on the evidence. *Id.* at 537-38.

C.      EXPERT TESTIMONY

Svaleson argues for the first time on appeal that Adams and Skinner offered improper opinion testimony by making "explicit or near explicit comment on guilt, veracity or credibility." Br. of Appellant at 35.  We disagree.

1.  Standard of Review

Because Svaleson raises this issue for the first time on appeal, he must show that allowing the testimony was a manifest error affecting a constitutional right.  *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).  Svaleson bears the burden of identifying the constitutional error and showing how the alleged error affected his rights at trial.  *Id.* at 926-27.

Generally, witnesses are prohibited from offering testimony in the form of an opinion regarding the guilt or veracity of the defendant.  *Id.* at 927.  Such testimony invades the province of the jury and unfairly prejudices the defendant.  *Id.*  In determining whether a witness has offered impermissible opinion testimony, this court considers the circumstances of the case, including five factors: "(1) 'the type of witness involved,' (2) 'the specific nature of the testimony,' (3) 'the nature of the charges,' (4) 'the type of defense,' and (5) 'the other evidence before the trier of fact.' "  *Id.* at 928 (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001).

We review a trial court's decision to admit expert testimony for an abuse of discretion.  *Id.* at 927.  The trial court abuses its discretion if its " 'decision is manifestly unreasonable or is based on untenable reasons or grounds.' "  *State v. Montgomery*, 163 Wn.2d 577, 597, 183 P.3d 267 (2008) (quoting *State v. Mason*, 160 Wn.2d 910, 922, 162 P.3d 396 (2007)).

2. Adams's Testimony

Svaleson argues that Adams offered improper opinion testimony when she discussed the technique of using "foundations" to elicit more accurate responses in child interviews. 6 VRP (Mar. 2, 2016) at 585. Svaleson further argues that it was improper for Adams to testify that her technique of asking children open-ended questions is "more accurate . . . statistically." 6 VRP (Mar. 2, 2016) at 585.

In *Kirkman*, the Washington Supreme Court held that the detective in a child rape case could testify as to the interview protocol used with a child victim. 159 Wn.2d at 931. A detective's testimony regarding the protocol used in interviewing a child victim "only provides context for the interview . . . and does not improperly comment of the truthfulness of the victim." *Id.* at 934. The court rejected the argument that this testimony carried a "special aura of reliability," as detectives often use similar protocols in interviewing children, whether they believe the child or not. *Id.* at 931.

As in *Kirkman*, Adams never testified that she believed E.B. was telling the truth. Instead, she testified as to the open-ended interview techniques used to question an alleged child victim. Like the detective in *Kirkman*, she simply testified that this interview protocol was more accurate. Because this testimony, at best, only indirectly related to E.B.'s credibility, Svaleson has failed to show that Adam's testimony was improper opinion testimony.

3. Skinner's Testimony

Svaleson argues that Skinner offered improper opinion testimony on Svaleson's guilt by testifying that she had diagnosed E.B. with "acute stress disorder." Br. of Appellant at 36. Svaleson also argues that it was improper for Skinner to testify that E.B.'s symptoms were

consistent with someone who has been sexually abused. Svaleson relies on *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987) to argue that Skinner's testimony regarding acute stress disorder was " 'in essence' a statement that the defendant was guilty." Br. of Appellant at 36.

In *Black*, the defendant in a rape case testified he had sex with the victim, but claimed it was consensual and that no force was involved. 109 Wn.2d at 338. To prove the sex was nonconsensual, the State offered the testimony of a counselor for a rape crisis center. *Id.* The counselor testified that the victim fit the profile for rape victims and that her symptoms fit "rape trauma syndrome." *Id.* at 339. The court held that expert testimony on rape trauma syndrome unfairly prejudiced the defendant because the term "rape trauma syndrome" itself suggested that the defendant was guilty of rape. *Id.* at 349.

Unlike the testimony in *Black*, Skinner's testimony did not embrace the diagnosis of "rape trauma syndrome." Skinner testified that she had diagnosed E.B. with "acute stress disorder" and explained that this diagnosis was used "when a traumatic experience has occurred, either a client has witnessed or has learned about a traumatic experience, and there are symptoms resulting from that traumatic experience that meet a criteria." 5 VRP (Mar. 1, 2016) at 538. Thus, unlike the testimony in *Black*, Skinner testified that there were several reasons a client may develop acute stress disorder.

*Kirkman* is instructive. In *Kirkman*, a doctor testified that in his evaluation, the child victim gave "a very clear history" and provided "a clear and consistent history of sexual touching . . . with appropriate affect." 159 Wn.2d at 929. The defendant argued that in stating the child's "report of sexual touching was clear, consistent, with appropriate affect, and that she used appropriate vocabulary," the doctor commented on the child's credibility. *Id.* at 929-30. The *Kirkman* court

rejected this argument, holding that this testimony "did not come close" to testifying the defendant was guilty or that he believed the child's account. *Id.* at 930.

Here, Skinner never opined that she believed Svaleson was guilty, nor did she state that she believed E.B.'s version of the events to be true. Instead, she testified that she diagnosed E.B. with acute stress disorder and that the symptoms E.B. exhibited were consistent with someone who has suffered a traumatic experience. Like the doctors' testimony in *Kirkman*, Skinner did not offer her opinion to an ultimate fact in the case. Svaleson fails to show Skinner's testimony was improper opinion testimony.

4.    Manifest Error Affecting a Constitutional Right

A manifest error affecting a constitutional right does not necessarily exist when a witness expresses an opinion on an ultimate issue of fact. *Id.* at 935. "Manifest" under RAP 2.5(a)(3) is to be construed narrowly and requires "a nearly explicit statement by the witness that the witness believed the accusing victim." *Id.* at 936. It also requires a showing of actual prejudice. *Id.* at 937.

Here, Svaleson fails to show that either Skinner or Adams provided improper opinion testimony. Also, the testimony, at best, only indirectly related to E.B.'s credibility. Therefore, we hold that Svaleson has failed to show Adam's and Skinner's testimony constituted a manifest error warranting reversal.

D.    PROSECUTORIAL MISCONDUCT

Svaleson argues the prosecutor committed misconduct in closing argument by: (1) shifting the burden to Svaleson to disprove the State's case; (2) commenting that testifying at trial was not "a comfortable place for [E.B.] to be" and was "an intimidating setting;" and (3) urging the jury to

not blame E.B. and "make this [her] fault."[4]  Br. of Appellant at 40; 6 VRP (Mar. 2, 2016) at 659, 664.  We hold these allegations of misconduct fail.

### 1.    Standard of Review

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial.  *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).  First, we determine whether the prosecutor's conduct was improper.  *Id.* at 759.  If the prosecutor's conduct was improper, the question turns to whether the prosecutor's improper conduct resulted in prejudice.  *Id.* at 760.  Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict.  *Id.*

However, if a defendant does not object at trial, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice.  *Id.* at 760–61.  Under this heightened standard of review, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.' "  *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).  In making a prejudice determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured."  *Id.* at 762.

---

[4] Svaleson recites numerous other statements made by the prosecutor during closing arguments, arguing that they were all "flagrant, prejudicial and ill-intentioned misconduct."  Br. of Appellant at 40.  However, because Svaleson provides no argument explaining how these statements constituted flagrant and ill-intentioned misconduct, we do not address these challenges.  RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

When reviewing a claim of prosecutorial misconduct, we consider the statements in the context of the entire case. *Thorgerson*, 172 Wn.2d at 443. In closing, the State is afforded wide latitude in drawing and expressing reasonable inferences from the evidence. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991), *cert denied* 516 U.S. 1160 (1996). The State may draw reasonable inferences from the evidence and respond to defense arguments in its closing. *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997), *cert denied* 523 U.S. 1008 (1998); *State v. Brown*, 132 Wn.2d 529, 566, 940 P.2d 546 (1997), *cert denied*, 523 U.S. 1007 (1998).

2. Improper Burden Shifting

Svaleson argues that the prosecutor improperly shifted the burden of proof onto him by asking the jury "why would [E.B.] make up all of that?" and stating that "what [E.B.] described is sexual contact, and if you believe her, if you believe what she's described, ladies and gentleman, you are satisfied beyond a reasonable doubt." Br. of Appellant at 38. Svaleson implies that the statements were prejudicial because they essentially informed the jury that Svaleson was guilty because there was no evidence showing he was not guilty.

In support, Svaleson relies on *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996), *review denied* 131 Wn.2d 1018 (1997). In *Fleming*, the court held that the prosecutor engaged in flagrant misconduct resulting in manifest constitutional error when she argued the jury "would have to find either that [the victim] has lied about what occurred . . . or that she was confused" to find the defendant not guilty. 83 Wn. App. at 213.

But the prosecutor here did not tell the jury that acquitting Svaleson meant finding E.B. had lied. Rather, the prosecutor stated that if the jury believed E.B.'s testimony, they would be satisfied beyond a reasonable doubt. Also, when viewed in the context of the entire closing

argument, the prosecutor's statements did not argue that Svaleson was guilty because there was no evidence showing he was not guilty. Instead, the prosecutor's arguments addressed the lack of evidence corroborating E.B.'s testimony.

Svaleson also argues that the prosecutor created "an effective improper presumption" that the jury should conclude proof of touching E.B.'s sexual parts was proof the touching was done for sexual gratification. Br. of Appellant at 20. In support, Svaleson cites to *State v. Deal*, 128 Wn.2d 693, 699-700, 911 P.2d 996 (1996) and *State v. Brunson*, 128 Wn.2d 98, 107, 905 P.2d 346 (1995). But both *Deal* and *Brunson* addressed a jury instruction that created an improper presumption. *Deal*, 128 Wn.2d at 700-01; *Brunson*, 128 Wn.2d at 105. Because Svaleson is not arguing that a jury instruction created an improper presumption, his reliance on *Deal* and *Brunson* is misplaced.

Also, when viewed in the context of the State's entire closing argument, the prosecutor did not create any presumption or improperly shift its burden to prove intent by arguing to the jury "if you believe what [E.B.'s] described, ladies and gentlemen, you are satisfied beyond a reasonable doubt." 6 VRP (Mar. 2, 2016) at 652. Instead, the prosecutor made this statement while discussing the credibility of E.B. and Svaleson. The prosecutor argued that the jury should consider Svaleson's motives, bias, and the reasonableness of his story when assessing his testimony, and that E.B. had no reason to fabricate. The prosecutor's latitude in closing argument extended to arguing that the jury should draw permissible inferences based on the evidence presented that Svaleson touched E.B. to gratify his sexual desire.

Moreover, because Svaleson did not object below, Svaleson has waived any error by failing to show that no curative instruction would have obviated any prejudicial effect. *Emery*, 174 Wn.2d. Thus, Svaleson's prosecutorial misconduct claim based on improper burden shifting fails.

3. Commenting on E.B.'s Demeanor

Svaleson argues the prosecutor engaged in flagrant and ill-intentioned misconduct by mentioning that court was uncomfortable and an intimidating setting for E.B. We disagree.

It is inappropriate for a prosecutor to make "nothing but an appeal to the jury's passion and prejudice." *State v. Claflin*, 38 Wn. App. 847, 850, 690 P.2d 1186 (1984), *review denied* 103 Wn.2d 1014 (1985). For example, in *Belgarde*, the court held that the prosecutor's repeated references to the defendant's association with the American Indian Movement as "a deadly group of madmen" was a deliberate appeal to the jury's passion and prejudice and encouraged the jury to render a verdict based on the defendant's association with AIM. 110 Wn.2d 504, 506, 755 P.2d 174 (1988). In *Claflin*, the court found prosecutorial misconduct where a prosecutor read "a poem utilizing vivid and highly inflammatory imagery" to describe rape's emotional effect on its victims. 38 Wn. App. at 850.

Here, the prosecutor made the challenged statements in the context of E.B.'s credibility. The statements were not made to inflame the passion and prejudice of the jury as in *Belgarde* and *Claflin*, but were made to explain why E.B. had difficulty remembering details when testifying. We hold that these statements were not made to obtain "undue sympathy" and that Svaleson's prosecutorial misconduct argument fails.

4.    Urging the Jury to Not Blame E.B.

Svaleson also contends that the prosecutor improperly conveyed to the jury that failing to convict Svaleson would be a finding that E.B. was at fault, relying on the prosecutor's statement "not to make this [E.B.'s] fault." Br. of Appellant at 39. We reject this assertion.

Svaleson argues the prosecutor "clearly conveyed to the jurors that a failure to convict would be to make this E.B.'s fault" through this statement. Br. of Appellant at 42. But he provides no support connecting this kind of statement to his conclusion. Svaleson's sole support for his argument is the prosecutor's comment to not "make this [E.B.'s] fault." 6 VRP (Mar. 2, 2016) at 664. Svaleson baldly asserts that through this statement, the prosecutor "clearly conveyed to the jurors that a failure to convict would be to make this E.B.'s fault." Br. of Appellant at 42.

Viewing this statement within the context of the entire case, the prosecutor made this statement in response to the defense's argument that E.B. failed to immediately call her mom with the house phone following the incident. In closing, defense counsel spent considerable time commenting on E.B.'s delay in reporting. He even counted the hours it took E.B. to say something. Given that Svaleson spent significant time addressing E.B.'s delay in reporting this incident, it was not improper for the prosecutor to respond by arguing:

> Don't make this [E.B.]'s fault. There is testimony that, you know, there's a house phone. Why wouldn't you call? She didn't have a cell phone yet at the time. It's not [E.B.]'s fault she did not pick up the house phone and call her mom. She knew her mom was coming to get her at the end of the day, and she told her mom pretty much as soon as she got in the car, but that aside, the defendant is the one who did this.

6 VRP (Mar. 2, 2016) at 664-65.

Because Svaleson fails to show the prosecutor's statement constituted improper conduct, we hold that Svaleson's prosecutorial misconduct argument fails.

E. INEFFECTIVE ASSISTANCE OF COUNSEL

Svaleson argues that his trial counsel was prejudicially deficient in his performance because he failed to object to the prosecutor's "egregious" misconduct and there was no legitimate tactical reason for failing to object. Br. of Appellant at 42. We disagree.

1. Legal Principles

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantees the accused the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert denied* 135 S. Ct. 153 (2014). We review an ineffective assistance of counsel claim de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

In *Strickland*, the U.S. Supreme Court outlined the prevailing standard to reverse a criminal conviction based on an ineffective assistance of counsel claim. *Grier*, 171 Wn.2d at 32. This entails a two-pronged inquiry in which the defendant must show (1) counsel's performance was deficient and (2) this deficient performance prejudiced the defense. *Id.* at 32-33. Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)). To prevail, the defendant must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Counsel's performance is not deficient if it can be characterized as legitimate trial strategy or tactics. *Estes*, 188 Wn.2d at 458.

Defense counsel's failure to object during the prosecutor's closing argument generally does not constitute deficient performance "because lawyers 'do not commonly object during closing argument "absent egregious misstatements." ' " *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.3d 1 (2007)). Further, to establish deficient performance or prejudice for failing to object, Svaleson must show that such objection would likely have been successful. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

2.   Counsel was not Ineffective

Here, defense counsel objected based on "undue sympathy" when the prosecutor mentioned testifying at trial was uncomfortable for E.B. 6 VRP (March 2, 2016) at 659. Because defense counsel objected, Svaleson's ineffective assistance of counsel claim fails.

Svaleson also argues that counsel provided ineffective assistance by failing to object to the prosecutor's arguments that purportedly shifted the burden and told the jury to not make this E.B.'s fault. Both of these claims fail because Svaleson has failed to show the prosecutor's remarks were improper. *See supra* Section D. Thus, Svaleson fails to show that even had defense counsel objected, the objection would have been sustained. Svaleson fails to show that counsel's failure to object was deficient performance, and his ineffective assistance of counsel claim fails.

F.   CUMULATIVE ERROR DOCTRINE

Svaleson argues that even if the errors standing alone do not warrant reversal, he was deprived of a fair trial due to the cumulative effect of the prosecutorial misconduct, the improper jury instruction, improper opinion testimony, and his ineffective assistance of counsel. Under the cumulative error doctrine, reversal may be required even if each individual error would otherwise

be considered harmless. *State v. Russell*, 125 Wn.2d 24, 93, 882 P.2d 747 (1994), *cert denied* 514 U.S. 1129 (1995). Because we hold that Svaleson failed to show that any one of his challenges constituted error, we likewise hold Svaleson's cumulative error argument fails.

E.     COMMUNITY CUSTODY CONDITIONS

Svaleson argues that a number of community custody conditions imposed by the sentencing court were either unauthorized or unconstitutional. First, he asserts it was improper for the sentencing court to prohibit him from "purchas[ing], possess[ing], or consum[ing] alcohol" or from frequenting "any location where alcohol is the primary product, such as taverns, bars, and/or liquor stores." CP at 78. Second, he challenges the sentencing court's authority to ban him from frequenting locations where children congregate and also argues this condition was unconstitutionally vague. Third, Svaleson argues the condition banning him from using social networking sites, including Facebook, Myspace, and Craigslist, was improper. Finally, Svaleson argues that the sentencing court's prohibition on patronizing prostitutes and businesses that promote commercialization of sex was not crime-related, but was also constitutionally vague, and violates the First Amendment.

The State concedes that the sentencing court exceeded its statutory authority in prohibiting Svaleson from purchasing alcohol or entering locations where alcohol is the primary product. The State also concedes that the sentencing court improperly prohibited Svaleson from using social networking sites and frequenting businesses that promote the commercialization of sex because they were not crime-related.

1. Standard of Review

We review de novo whether the sentencing court had the statutory authority to impose a particular community custody condition. *State v. Acevedo*, 159 Wn. App. 221, 231, 248 P.3d 526 (2010). But a challenge that a community custody condition is not crime-related is reviewed for abuse of discretion. *State v. Sanchez Valencia*, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010). In applying the abuse of discretion standard, we will only reverse a condition that we find to be "manifestly unreasonable." *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). Of course, imposing an unconstitutional condition is always "manifestly unreasonable." *Id.* We do not presume that community custody conditions are constitutionally valid. *Sanchez Valencia*, 169 Wn.2d at 793.

When we determine a sentencing court has imposed an unauthorized condition on community custody, we will remedy the error by remanding to the sentencing court with instruction to strike the unauthorized condition. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

2. Alcohol Prohibitions

Svaleson challenges the sentencing court's statutory authority to impose two community custody prohibitions involving alcohol and argues that neither condition was crime-related. First he challenges condition 14, which prohibited him from "purchas[ing], possess[ing], or consum[ing] alcohol." CP at 78. Next, he challenges condition 15, which prohibited him from entering "into any location where alcohol is the primary product, such as taverns, bars, and/or liquor stores." CP at 78. The State concedes that the portion of condition 14 prohibiting Svaleson from possessing or purchasing alcohol and condition 15 exceeded the sentencing court's statutory

authority. We accept the State's concession and remand to the sentencing court to amend community custody condition 14 to only prohibit consuming alcohol and to strike condition 15.

At the time of the incident in 2014, former RCW 9.94A.703 allowed the sentencing court to impose the discretionary community custody condition that Svaleson "[r]efrain from consuming alcohol." RCW 9.94A.703 (3)(e) (2014).[5] Thus, the sentencing court had the authority under former RCW 9.94A.703(3)(e) to prohibit Svaleson from consuming alcohol as a condition of his community custody. But the sentencing court did not have statutory authority to impose the conditions related to possessing, purchasing, or frequenting locations where alcohol was the primary product unless these conditions were crime-related.

Under RCW 9.94A.703(3)(f), the sentencing court had discretionary authority to order Svaleson to "[c]omply with any crime-related prohibitions." A condition is crime-related only if there is specific evidence showing it contributed to the offense. *State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003).

Because there was no evidence that alcohol played a role in Svaleson's offense, it was manifestly unreasonable for the sentencing court to prohibit the purchase and possession of alcohol as a crime-related condition. Therefore, we hold that the condition prohibiting Svaleson from entering a location where alcohol is the primary product was an abuse of discretion because there was no evidence that showed this was a crime-related condition. Thus, we remand to the sentencing court with instructions to strike the portion of condition 14 prohibiting him from purchasing or possessing alcohol and to strike condition 15.

---

[5] At sentencing in 2016, the legislature had updated the discretionary community custody conditions to "[r]efrain from possessing or consuming alcohol." RCW 9.94A.703 (3)(e) (2015).

3. Ban on Frequenting Locations Where Children Congregate

Svaleson challenges community custody condition 23 prohibiting him from visiting locations where children congregate.[6]  Svaleson argues that the condition is not crime-related.  He also makes a vagueness challenge.  We disagree on both accounts.

a. The Condition is Crime-Related

Svaleson argues that the condition banning him from places children congregate is not crime-related because Svaleson committed this crime in a private home.  We disagree.

A condition is crime-related if it directly relates to the underlying crime and need not be causally related to the crime.  *Zimmer*, 146 Wn. App. at 413 (community custody condition prohibiting possession of drug paraphernalia directly related to the defendant's conviction for possession of methamphetamine); *State v. Acrey*, 135 Wn. App. 938, 946-47, 146 P.3d 1215 (2006) (community custody condition prohibiting the defendant from working as a caretaker for elderly or disabled individuals after she manipulated an elderly man into marrying her and subsequently drained his bank account was crime-related because the defendant's criminal method involved gaining the trust of a dependent person).

Here, the condition prohibiting Svaleson from visiting locations where children congregate directly related to his conviction for child molestation.  Svaleson was convicted of a crime where the victim was a 10 year old girl.  Although he did not meet E.B. in a public location, his criminal

---

[6] Svaleson challenges this condition by conflating two distinct legal issues in one assignment of error, but we address each in turn.  *State v. Zimmer*, 146 Wn. App. 405, 412, 190 P.3d 121 (2008), *review denied*, 165 Wn.2d 1035 (2009).

method involved gaining the trust of a young child. Therefore, it was not manifestly unreasonable for the trial court to prohibit Svaleson from frequenting locations where children congregate.

        b.    The Condition is not Unconstitutionally Vague

Alternatively, Svaleson argues condition 23 is unconstitutionally vague because a ban on frequenting places children congregate "includes an incredibly open-ended list." Br. of Appellant at 46. We disagree.

The guarantee of due process, afforded by the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution requires citizens to have fair warning of conduct proscribed. *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A statute is unconstitutionally vague if it fails to "(1) provide ordinary people fair warning of proscribed conduct and (2) have standards that are definite enough to ' "protect against arbitrary enforcement." ' " *Irwin*, 191 Wn. App. at 652-53 (quoting *Bahl*, 164 Wn.2d at 752-53). A community custody condition is unconstitutionally vague if it fails in either respect. *Id.* at 653.

Svaleson primarily relies on the holding in *Irwin*. The *Irwin* court held a condition prohibiting the defendant from "frequent[ing] areas where minor children are known to congregate, as defined by the supervising CCO" was unconstitutionally vague. 191 Wn. App. at 652. But the *Irwin* court reached this decision noting that "[w]ithout some clarifying language or an illustrative list of prohibited locations . . . the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.' " *Id.* at 655 (quoting *Bahl*, 164 Wn.2d at 753.

In contrast, Svaleson challenges a condition that states:

> Do not go to or frequent places where children congregate, (I.E. Fast-food outlets, libraries, theatres, shopping malls, play grounds and parks, etc.) unless otherwise approved by the Court.

30

CP at 79.

The condition imposed here cures the defect in the condition challenged in *Irwin* because it contains the "illustrative list of prohibited locations" the *Irwin* court held would provide sufficient notice. *Irwin*, 191 Wn. App. at 655. The condition here further alleviates the arbitrary enforcement concerns in *Irwin* because it does not vest a correctional officer with the authority to define "places where children congregate." CP at 79. Because the condition here cures the vagueness defects identified in *Irwin*, we hold Svaleson's vagueness challenge fails.

4. Ban on Social Networking Sites

Svaleson challenges the community custody condition prohibiting him from "joining or perusing any public social websites ([Facebook], Myspace, *Craigslist*, etc.), Skyping, or telephoning any sexually-oriented 900 numbers." CP at 79. Again, he contends the condition is not crime-related and is unconstitutionally vague. The State concedes the condition is not crime-related. We accept the State's concession and hold that the condition is not crime-related.

Internet use is crime-related if there is evidence that Internet use "contributed in any way to the crime." *O'Cain*, 144 Wn. App. at 775. Here, there was no evidence before the sentencing court that technology, let alone social networking websites, contributed in any way to Svaleson's crime of child molestation. Without evidence that social networking websites, Skype, or sexually-oriented 900 numbers contributed to the crime, we hold that the sentencing court erred in imposing this condition.[7]

---

[7] Because we decide this issue on non-constitutional grounds, we do not reach the constitutional challenge. *State v. Smith*, 104 Wn.2d 497, 505, 707 P.2d 1306 (1985).

Thus, we accept the State's concession and remand to the trial court with instructions to strike community custody condition 27.

5. Prohibitions Related to the Commercialization of Sex

Svaleson challenges community custody condition 29, which prohibited him from "patronize[ing] prostitutes or any businesses that promote the commercialization of sex." CP at 79. He argues that the condition was not crime-related, was unconstitutionally vague, and violates the First Amendment. Again, the State concedes this condition was not crime-related.

Here, there was no evidence to suggest that establishments promoting the commercialization of sex contributed in any way to Svaleson's crime. Therefore, the sentencing court erred in imposing this condition.

However, in Washington, it is a misdemeanor to patronize a prostitute. RCW 9A.88.110(4). The sentencing court has authority to require an offender to engage in law-abiding behavior. *Jones*, 118 Wn. App. at 205. Thus, the sentencing court did not abuse its discretion in prohibiting Svaleson from patronizing a prostitute in violation of Washington law.

Thus, we hold that the sentencing court erred in prohibiting Svaleson from patronizing businesses that promote the commercialization of sex because such prohibition was not crime-related and remand for the sentencing court to strike the community custody condition prohibiting Svaleson from patronizing businesses that promote the commercialization of sex.[8]

---

[8] Svaleson also raises constitutional vagueness and First Amendment challenges to the condition related to the "commercialization of sex." Br. of Appellant at 48-49. Because we decide Svaleson's "commercialization of sex" claim on non-constitutional grounds, we decline to address his constitutional arguments. *Smith*, 104 Wn.2d at 505.

G.     LEGAL FINANCIAL OBLIGATIONS

Svaleson argues the sentencing court erred in imposing "standard" legal financial obligations (LFOs) because it failed to consider his financial resources and the burden those costs would impose. Br. of Appellant at 49. We disagree.

1.     Standard of Review

We review a sentencing court's decision on whether to impose LFOs for abuse of discretion. *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015), *review granted in part* 187 Wn.2d 1009 (2017). A court abuses its discretion when it imposes an LFO based on untenable grounds or for untenable reasons. *Id.*

2.     The Sentencing Court did not Err in Imposing Mandatory LFOs

Svaleson relies on *Blazina*[9] to argue the court abused its discretion in applying LFOs. *Blazina* is not instructive here because it addressed the sentencing court's imposition of discretionary fees.

Here, the sentencing court imposed only costs and fees mandated by statute: $500 Crime Victim Penalty Assessment,[10] $200 criminal filing fee,[11] and $100 DNA testing fee.[12] Thus,

---

[9] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

[10] Former RCW 7.68.035(1)(a) (2011), *amended by* LAWS OF 2018, ch. 269, S.S.H.B. No. 1783; *State v. Curry*, 118 Wn.2d 911, 917, 829 P.2d 166 (1992).

[11] Former RCW 36.18.020(h) (2013), *amended by* LAWS OF 2018, ch. 269, S.S.H.B. No. 1783; *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

[12] RCW 43.43.754(1)(a); Former RCW 43.43.7541 (2011), *amended by* LAWS OF 2018, ch. 269, S.S.H.B. No. 1783.

because the LFOs imposed were mandated by statute, the sentencing court did not err in imposing them.

H.     SAG ISSUES

Svaleson asks this court to review (1) whether the prosecutor engaged in prosecutorial misconduct; (2) whether his attorney provided ineffective assistance of counsel; (3) the sufficiency of the evidence; and (4) whether the cumulative error doctrine compels reversal.  We reject each of these claims.

1.   Prosecutorial Misconduct[13]

Svaleson contends that the prosecutor trivialized the State's burden of proof because she impermissibly "prepped" the jury to overlook the many details E.B. could not remember while testifying.  SAG at 4. Svaleson relies on *State v. Lindsay*, 180 Wn.2d 423, 326 P.3d 125 (2014), for support.

 In *Lindsay*, the Washington Supreme Court held it was improper for the prosecutor to describe reasonable doubt in closing argument by quantifying the standard of proof through a jigsaw puzzle analogy.  180 Wn.2d at 436.  The court in *Lindsay* did not hold the prosecutor engaged in misconduct by arguing the State had met its burden of proof when one of the witnesses could not remember every detail of the incident.  *Id.*

Here, Svaleson's argument based on *Lindsay* fails because the prosecutor never incorporated a jigsaw puzzle analogy when describing the reasonable doubt standard.  Also, it was not improper for the State to argue it had met its burden of proof, even though E.B. could not

---

[13] We addressed Svaleson's challenge that the prosecutor impermissibly shifted the burden of proof during closing argument in *supra* Section D.2.

remember several details of the incident during testimony.  Thus, we hold that Svaleson's prosecutorial misconduct challenge fails.

> 2.  Counsel was not Ineffective

>> a.  Counsel was not Ineffective for Failing to Object

Svaleson argues his counsel was ineffective because he failed to object to the State's "ridiculous and inflammatory question" asking whether Svaleson was ever married to E.B.  SAG at 8.  We reject this argument.

To successfully prove counsel was ineffective for failing to object to this line of questioning, Svaleson must show the objection would likely have been successful.  *Gerdts*, 136 Wn. App. at 726-27.  Svaleson cannot make this showing here because first degree child molestation is defined as "knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator." RCW 9A.44.083(1).  Thus, in order to meet its burden of proof the State was required to prove E.B. and Svaleson were not married at the time.  Any objection to this line of questioning would have failed, and we hold that Svaleson's ineffective assistance of counsel claim fails.

>> b.  Counsel was not Ineffective for Failing to Cross-Examine the Officers

Svaleson argues counsel was ineffective for failing to cross-examine the officers about the lack of physical evidence in the case.  We disagree.

Counsel renders ineffective assistance of counsel for failing to cross-examine a State expert only if such failure reasonably affected the outcome.  *Estes*, 188 Wn.2d at 458.  Here, Svaleson has not shown that cross-examining the officer on the lack of physical evidence in his case would likely have affected the outcome.  The jury's finding that he molested E.B. did not turn on any

physical evidence and the State repeatedly conceded this case did not involve physical medical findings. Therefore, Svaleson's argument fails.

c. Counsel was not Ineffective for Failing to Call Witnesses

Svaleson also contends his trial counsel was ineffective because, other than Svaleson, counsel failed to call any witnesses. However, Svaleson fails to explain how additional witnesses would have assisted him in contesting the charge. We hold that Svaleson has failed to show counsel's performance was deficient for failing to call additional witnesses because he has not shown how additional witnesses would have assisted his defense or that there is a reasonable probability the outcome of the trial would have been different.

3. Sufficiency of Evidence

Svaleson argues the State presented insufficient evidence that he touched E.B. with intent to gratify his sexual desire. As discussed in Section A above, we hold that this argument fails.[14]

4. Cumulative Error Doctrine

Svaleson contends the combined errors he identified compel reversal. Because Svaleson has failed to identify any instance constituting error, we hold that his argument fails.

---

[14] Svaleson also claims the State presented insufficient evidence because E.B.'s testimony contained many "I don't remembers" and "I don't knows." SAG at 10. However, " '[t]he test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.' " *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318, *review denied* 166 Wn.2d 1020 (2009) (quoting *Salinas*, 119 Wn.2d at 201). Also, " 'all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.' " *Id.* Svaleson fails to show how E.B.'s challenged testimony amounts to insufficient evidence for any rational trier of fact to find guilt beyond a reasonable doubt.

CONCLUSION

We affirm Svaleson's conviction. We reverse the challenged community custody conditions as noted in this opinion and remand for the sentencing court to strike the community conditions consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.