IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85599-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| OMAR DE JESUS FELIX-GAMEZ, | |
| Appellant. | UNPUBLISHED OPINION |

CHUNG, J. — Omar De Jesus Felix Gamez appeals his conviction for two counts of rape of a child in the second degree. He contends the trial court erred when it admitted propensity evidence over his objection and lay witness opinion testimony concerning his guilt. He also argues the trial court erred when it imposed community custody conditions that prevent him from consuming alcohol and require him to be available for and submit to urinalysis (UA) and breath analysis (BA) upon request of a community corrections officer (CCO) or a chemical dependency treatment provider. Additionally, he argues the trial court erred when it imposed a $500 victim penalty assessment (VPA). We remand to strike the VPA and otherwise affirm.

FACTS

Felix Gamez met and began dating Nancy Delgado Garcia in 2013. At the time, Delgado Garcia was a single parent supporting her 10-year-old daughter, M.E.D. Since Delgado Garcia worked long hours at a restaurant, Felix Gamez assisted in watching M.E.D. after school or gymnastics practice.

M.E.D. eventually confided with family members that Felix Gamez had raped her while she was in middle school. The first time, M.E.D. was washing dishes at the sink when Felix Gamez grabbed her by the waist and wrapped his arms around her. M.E.D. testified that he eventually "pulled my underwear down, and he took out his penis, and he bent me over like to the sink, and he put his penis inside my vagina, and he started going back and forth." M.E.D. testified that this occurred during her winter gymnastics season, around sixth grade and before she turned 14 years old.

At some point after the first rape, Felix Gamez showed M.E.D. a video of himself having sex with Delgado Garcia from behind while in their bedroom. He told M.E.D. that he wanted to do the same with her the "next time." Delgado Garcia confirmed the video existed and shared that Felix Gamez admitted to showing the video to M.E.D. accidentally. Delgado Garcia also testified at trial that Felix Gamez had once told her during sex that he wished she was 14 years old and a virgin. She also stated that some of Felix Gamez's behavior was "not normal," and she "freak[ed] out" when she witnessed some of M.E.D.'s behavior around him.

M.E.D. alleged the second rape occurred after she participated in a gymnastics competition, when she was in the seventh grade. While searching for clothes in Delgado Garcia's bedroom, Felix Gamez began touching her and eventually "threw [her] on the bed." M.E.D. testified that he then positioned her "so [she] was facing towards the bed. And then he bent [her] over, and he pulled [her] pants down again, and. . . . he put his penis into [her] vagina again." The

2

position the two were in was similar to how he was positioned with Delgado Garcia in the video he had previously shown M.E.D.

After M.E.D. disclosed the rapes, the State charged Felix Gamez in 2020 with two counts of rape of a child in the second degree. A jury convicted Felix Gamez as charged. The trial court imposed concurrent indeterminate sentences of 136 months to life. The trial court also imposed, among a variety of community custody conditions, a set of conditions to prevent Felix Gamez from consuming alcohol and to submit to urine or breath analysis "upon request of the CCO and/or chemical dependency treatment provider."

Felix Gamez timely appeals.

## DISCUSSION

Felix Gamez challenges Delgado Garcia's testimony that he told her he wished she were 14 years old and a virgin as improper propensity evidence. He also argues that Delgado Garcia's commentary that certain conduct of his was "not normal" and that she "freak[ed] out" when watching him and M.E.D. interact was improper opinion testimony concerning his guilt. Additionally, he challenges the community custody conditions that prevent him from consuming alcohol and that require him to submit to monitoring, as the conditions are not crime-related. He also requests this court strike the VPA from his sentence because he is indigent.

### I.    ER 404(b)

Felix Gamez argues that the trial court erred when it improperly admitted "other acts" evidence through Delgado Garcia's testimony against him over his

objection. The State contends that Felix Gamez did not object to Delgado Garcia's testimony based on ER 404(b) at trial and failed to preserve the error, so waived the issue pursuant to RAP 2.5(a). We agree with the State.

"A party may assign evidentiary error on appeal only on a specific ground made at trial." State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). "This objection gives a trial court the opportunity to prevent or cure error." Id. Generally, appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a). "However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right." Kirkman, 159 Wn.2d at 926; RAP 2.5(a). Accordingly, "[t]he defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial. It is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." Id. at 926-27 (quoting State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)).

Here, Felix Gamez assigns error on appeal to Delgado Garcia's testimony based on ER 404(b). Generally, propensity evidence, i.e., "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," ER 404(a), although it may be admissible "for other purposes" under ER 404(b).

During Delgado Garcia's testimony, the State asked her if Felix Gamez said anything "strange" to her when they were having sex. Felix Gamez initially objected on "the relevance of this line of questioning at this point." Upon hearing Delgado Garcia's initial answer, he also objected to it being nonresponsive. After

4

hearing the initial answer, the court sustained Felix Gamez's objection that the testimony was nonresponsive and asked the jury to "disregard the last part of that answer."

The State then asked again if Felix Gamez had ever said anything to her, "while you were having sex with him, that [she] thought was odd?" This time, Felix Gamez objected to the question as "leading . . . and to the relevance." The court overruled the objection, and Delgado Garcia testified that Felix Gamez told her during sex that he wished she was 14 years old.

The State repeated the statement and attempted to ask a follow-up question but Felix Gamez again objected as "asked and answered[,] repetitive[,] and narrative." The court again overruled the objection, and Delgado Garcia explained that she asked Felix Gamez why he would say something like that, and he responded, "[B]ecause I wish you were a virgin so I could be your first man."

Thus, while Felix Gamez lodged multiple objections to the line of questioning regarding his comments to Delgado Garcia about wishing she were 14 years old, including relevance,[1] none related to ER 404(b). Accordingly, Felix Gamez's challenge to the testimony as improper propensity evidence based on ER 404(b) is raised for the first time on appeal.

Under RAP 2.5(a), a party may raise an error for the first time on appeal if it is a manifest error impacting a constitutional right. But evidentiary errors such as that claimed by Felix Gamez here—erroneous admission of propensity evidence under ER 404(b) evidence—are not of constitutional magnitude. State

---

[1] ER 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). Accordingly, we decline to review the claim that the court improperly admitted Delgado Garcia's testimony.

II.      Testimony on Ultimate Issue of Guilt

Felix Gamez next argues that the trial court violated his right to a fair trial when it permitted Delgado Garcia to offer her opinion on the ultimate issue of guilt. He asserts even if he did not object below, he can raise the challenge for the first time on appeal because admitting the evidence amounted to manifest constitutional error. The State again counters the issue is waived pursuant to RAP 2.5(a), and even if the issue was preserved, "the challenged testimony does not convey an opinion on Felix Gamez's guilt." We agree that the challenged testimony did not amount to manifest constitutional error.

"Generally, no witness, lay or expert, may give an opinion, directly or inferentially, on the defendant's innocence or guilt." State v. Johnson, 152 Wn. App. 924, 930, 219 P.3d 958 (2009) (citing State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987)). "Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." Kirkman, 159 Wn.2d at 927. An error of constitutional magnitude is presumed prejudicial and "the State bears the burden of proving it was harmless beyond a reasonable doubt." State v. Lynch, 178 Wn.2d 487, 494, 309 P.3d 482 (2013). "However, if the testimony does not directly comment on the defendant's guilt or veracity, helps the jury, and is based on inferences from

the evidence, it is not improper opinion testimony." Johnson, 152 Wn. App. at 930-31.

Additionally, the Washington Supreme Court has recognized that "[a]dmission of witness opinion testimony on an ultimate fact without objection, is not automatically reviewable as a 'manifest' constitutional error." Kirkman, 159 Wn.2d at 936; see also City of Seattle v. Heatley, 70 Wn. App. 573, 583-86, 854 P.2d 658 (1993). Rather, " '[m]anifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim." Kirkman, 159 Wn.2d at 936. The court reasoned that "requiring an explicit or almost explicit witness statement on an ultimate issue of fact is consistent with our precedent holding the manifest error exception is narrow." Id. (citing State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). In this case, a violation would concern explicit or nearly explicit comments as to whether Felix Gamez raped M.E.D.

As the basis for his claim of improper opinion testimony, Felix Gamez highlights instances in which Delgado Garcia described the relationship between himself and M.E.D. as not being "normal." The first time Delgado Garcia used this term, she testified that Felix Gamez shared the video with M.E.D. of him and Delgado Garcia having sex. She stated that while it was "normal" for couples to engage in such activities, "what [wa]s not normal" was that he did not erase the video after she had asked him to do so and that it "was not normal" for him to show it to her daughter. She then reiterated "[t]hat's not normal. That's not what somebody who is sensible would do." As Felix Gamez had objected to the

7

answer as nonresponsive, the court sustained the objection and then instructed the jury to "disregard the last part of that answer." Thus, the court immediately addressed Felix Gamez's stated concern, and the jury is presumed to have followed that instruction. State v. Montgomery, 163 Wn.2d 577, 596, 183 P.3d 267 (2008).

In another exchange, Delgado Garcia discussed confronting Felix Gamez about showing M.E.D. the video of them having sex. Delgado Garcia testified that she confronted him after "[she] saw [her] daughter with [her] own eyes standing on her tippy toes like this for a kiss on [Felix Gamez]." She further stated that was when she "freak[ed] out" and repeatedly asked M.E.D. and Felix Gamez "what [wa]s going on." According to Delgado Garcia, when she tried to speak with M.E.D., she appeared scared. At this point in the testimony, Felix Gamez highlighted his standing objection to hearsay, and the court reminded Delgado Garcia not to repeat anything M.E.D. said.

Subsequently, without giving details as to what M.E.D. said during the conversation, Delgado Garcia testified that after her discussion with M.E.D., she then discussed the video with Felix Gamez, and he admitted that he shared it with M.E.D. When the State asked Delgado Garcia what caused him to share this information, she stated:

> Because I talked to him. I asked him what was going on because it wasn't normal what—the way that I saw my daughter acting wasn't normal when she was standing in front of the bedroom to my room. And so I asked him. I went in. I talked to him about the video and asked him how he could have permitted [M.E.D.] to . . . have seen it.

In support of his claim, Felix Gamez cites Johnson, in which the defendant established manifest constitutional error because the improper testimony included hearsay statements that the wife had expressed an explicit belief that the defendant was guilty. 152 Wn. App. at 929-34. In Johnson, the State charged the defendant with two counts of child molestation in the first degree. Id. at 928. At trial, the defendant's wife testified on his behalf. Id. at 932. In rebuttal, the State elicited testimony from the alleged victim and her family members concerning a confrontation with the defendant's wife. Id. at 932-33. The wife did not initially believe the allegations and asked the alleged victim to "describe something that only someone that had been with [the defendant] would know." Id. at 932. When the wife heard corroborating details, one of the family members testified that "[s]he freaked out. She became hysterical. She said it was true and the rest of the night became a nightmare." Id. at 930, 932. Division Two rejected the State's argument that the evidence was admissible as impeachment evidence, because the wife's opinion was collateral and not a proper subject for impeachment, as well as highly prejudicial and had little if any evidentiary value. Id. at 933-34. Instead, the court held that the testimony about the wife's reaction constituted impermissible opinion about the defendant's guilt, as the jury should not have heard that the wife believed the allegations. Thus, this impermissible opinion on guilt was a manifest constitutional error that could be raised for the first time on appeal. Id. at 934.

As the State notes, the testimony was quite different in this case. Although both involved a witness's emotional reaction to information

related to the defendant's behavior, Delgado Garcia's testimony that she "freak[ed] out" was about her own reaction to M.E.D.'s behavior and perceived mood, not about the defendant's conduct. Unlike the reaction in Johnson, Delgado Garcia's reaction does not express an opinion as to whether the defendant had engaged in the "ultimate facts" of the crime, i.e., rape of a child. Additionally, Delgado Garcia merely testified that she believed it was not "normal" for Felix Gamez to not erase the video at her request and that it was not "normal" for him to show it to M.E.D. These are not the type of "explicit" or "nearly explicit statement[s] by the witness that the witness believed the accusing victim," as required by Kirkman, 159 Wn.2d at 936.

Felix Gamez fails to show that Delgado Garcia's testimony expressed an improper opinion on his guilt. Thus, he does not demonstrate that the alleged error was a manifest constitutional error that may be raised for the first time on appeal.

III.    Community Custody Conditions

As a condition of community custody, the trial court ordered Felix Gamez to (1) refrain from consuming alcohol and (2) "[b]e available for and submit to urinalysis and/or breath[]analysis upon request of the CCO and/or chemical dependency treatment provider." Felix Gamez asserts the trial court erred when it imposed community custody conditions prohibiting and monitoring his alcohol use because alcohol was not related to his crimes. "We review a trial court's imposition of a community custody condition for an abuse of discretion and will

reverse only if the condition is manifestly unreasonable." State v. Houser, 30 Wn. App. 2d 235, 276-77, 544 P.3d 564 (2024).

The State argues the issue is waived and, alternatively, that RCW 9.94A.703(3)(e) specifically authorizes the trial court to prohibit an offender from possessing or consuming alcohol regardless of whether alcohol was involved in the crime. RCW 9.94A.703(3), entitled "Discretionary conditions," provides that "[a]s part of any term of community custody, the court may order an offender to" "(e) Refrain from possessing or consuming alcohol." Our supreme court has recently held that a condition prohibiting alcohol use is "statutorily authorized and do[es] not have to be crime related to be imposed." State v. Nelson, No. 102942-0, slip op. at 27 (Wash. Mar. 27, 2025), https://www.courts.wa.gov/opinions/pdf/1029420.pdf; see also State v. Jones, 118 Wn. App. 199, 206-07, 76 P.3d 258 (2003), cited in Nelson, slip op. at 20. Accordingly, the trial court did not abuse its discretion when it imposed a condition that Felix Gamez must refrain from possessing or consuming alcohol, regardless of whether alcohol contributed to the crime.

Finally, the State argues the community custody condition requiring Felix Gamez to be available for and submit to UA or BA upon request of the CCO or a chemical dependency treatment provider is not ripe for review. When considering the ripeness of a preenforcement challenge to a community custody condition, this court must analyze whether the " 'issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (quoting State v. Sanchez

Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)). We must also consider the hardship the petitioner would face if we refused to review the challenge on direct appeal. Id. (citing Sanchez Valencia, 169 Wn.2d at 789).

The court in Nelson recently settled this issue, holding a community custody condition requiring the defendant to "submit to breathalyzer testing or any other testing to ensure no alcohol consumption" was not ripe for review. Nelson, No. 102942-0, slip op. at 6, 13. The issues were primarily legal, the BA and UA testing conditions were final, and the conditions as written were not vague. Id. at 14, 16. However, the court reasoned that further factual development was necessary because the court imposed the conditions to monitor compliance with other valid conditions prohibiting alcohol and drug use, but there was no evidence as to whether or how the State would enforce the conditions by requesting and conducting BA or UA testing. Id. at 16-17. Thus, the preenforcement challenge was not ripe for review "because it rest[ed] on the factually unsupported assumption that BA and UA testing will be 'conducted in an unreasonable manner' or 'used impermissibly as part of "a fishing expedition to discover evidence of other crimes." ' " Id. at 17 (quoting State v. Olsen, 189 Wn.2d 118, 134, 399 P.3d 1141 (2017) (quoting State v. Combs, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000))). Furthermore, the Nelson court deemed the risk of hardship to the defendant was low, as the testing conditions did not require him "to do, or refrain from doing, anything upon his release." Id. at 18. Accordingly, under Nelson, we decline to review Felix Gamez's challenge to the UA/BA condition, as the issue is not ripe for review.

IV.     <u>VPA</u>

Felix Gamez argues this court should strike the VPA because he is indigent and recent amendments to the statute bar courts from imposing such fees on indigent defendants. The State agrees. The 2023 amendments that prohibit courts from imposing the VPA when the defendant is indigent apply to matters pending on direct appeal. <u>State v. Ellis</u>, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023); <u>see</u> RCW 7.68.035(4). Thus, we remand to strike the VPA from Felix Gamez's judgment and sentence.

CONCLUSION

We remand to strike the VPA and otherwise affirm.


_Chung, J._____


WE CONCUR:

_____          _____